ELIJAH DEBNAM & others[1] *vs.* TOWN OF BELMONT
& another[2]
(and a companion case).

Middlesex. March 3, 1982. — April 7, 1983.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, & O'CONNOR, JJ.

*Practice, Civil,* Extraordinary review. *Civil Service,* Termination of employment, Judicial review, Fire fighters. *Municipal Corporations,* Municipal finance.

An action seeking extraordinary review pursuant to G. L. c. 249, § 4, was the appropriate way for a town to obtain judicial review of a decision by the Civil Service Commission, inasmuch as the town was not entitled to review under c. 31, § 44. [633-634]

The fact that a town had over $500,000 in a reserve fund established under G. L. c. 40, § 6, did not preclude the town from laying off a number of fire fighters for lack of money in response to a reduction of municipal revenues due to the enactment of St. 1980, c. 580. [634-636]

CIVIL ACTIONS commenced in the Superior Court Department on April 10 and April 16, 1981, respectively.

The cases were heard by *William H. Sullivan,* J., a District Court judge sitting under statutory authority.

The Supreme Judicial Court granted a request for direct appellate review.

*Jonathan P. Hiatt* for the plaintiffs.

*Robert J. Muldoon, Jr. (Robert Crowe* with him) for the town of Belmont & another.

*Judith S. Yogman,* Assistant Attorney General, for Civil Service Commission, submitted a brief.

---

[1] Brian J. Foy, Ronald P. Gaudet, John C. Madden, Joseph D. McDonald.

[2] James Murphy, individually and as acting chief of the town of Belmont fire department.

O'CONNOR, J. Debnam, Foy, Gaudet, Madden, and McDonald, permanent fire fighters in the fire department of the town of Belmont, were laid off, effective February 1, 1981, in response to a reduction of municipal revenues due to the enactment of St. 1980, c. 580, popularly known as Proposition 2½. The fire fighters appealed to the Civil Service Commission (commission), pursuant to G. L. c. 31, § 43, as appearing in St. 1978, c. 393, § 11. The commission reversed the town's action and ordered that the fire fighters be restored to their positions without loss of compensation or other rights. The fire fighters sought to enforce the commission's order by commencing an action in the nature of mandamus pursuant to G. L. c. 249, § 5. The town sought review of the commission's action by commencing an action in the nature of certiorari pursuant to G. L. c. 249, § 4. These actions were consolidated for trial. A District Court judge, sitting by designation in the Superior Court, set aside the commission's decision in each action. The fire fighters and the commission appealed, and we granted direct appellate review. We affirm the judgments of the Superior Court. [3]

At the outset we dispose of the contention made by the commission that the Superior Court was without subject matter jurisdiction over the town's action in the nature of certiorari. An action in the nature of certiorari may be brought to correct errors in proceedings "not otherwise reviewable by motion or by appeal." G. L. c. 249, § 4. The commission argues that pursuant to G. L. c. 31, § 44, the town had a right to appeal the commission's decision, and that, therefore, the jurisdictional requirement of G. L. c. 249, § 4, was not met. This argument is without merit. General Laws c. 31, § 44, grants District or Municipal Court review to a person who, "following a hearing *requested by him* pursuant to section forty-two or section forty-three" (emphasis added), is aggrieved by a decision of

---

[3] By October, 1981, the town had voluntarily reinstated the fire fighters. Lost compensation was not restored.

the commission. The appointing authority may not request a hearing under G. L. c. 31, § 42 or § 43, and therefore it is not entitled to review under c. 31, § 44. The town's action in the nature of certiorari was the appropriate way to obtain this court's review of the commission's action. See *Commissioners of Civil Serv.* v. *Municipal Court of the City of Boston*, 369 Mass. 84, 90 (1975); *School Comm. of Salem* v. *Civil Serv. Comm'n*, 348 Mass. 696, 697-698 (1965).

The following facts were found by the commission. The town set its tax rate for fiscal 1981 before the enactment of Proposition 2½. Faced with a projected $800,000 shortfall in revenues, due to reduction of the automobile excise tax as provided by Proposition 2½, the selectmen determined that each town agency should cut expenses by approximately 4.2 percent. This cut was achieved in the fire department by laying off Debnam, Foy, Gaudet, Madden, and McDonald. No action was taken by the town meeting to reduce the fire department's appropriation, which was sufficient to pay the fire fighters' salaries. When the layoffs occurred, the town had over $500,000 in its reserve fund, which was established pursuant to G. L. c. 40, § 6. The parties stipulated before the commission that the town's good faith with respect to the layoffs was not in issue.

General Laws c. 31, § 41, protected the fire fighters against layoff "[e]xcept for just cause." "Just cause" is not specifically defined in G. L. c. 31. However, § 1 of that chapter defines layoff as "a temporary discontinuance of employment for lack of work or lack of money." We conclude that either lack of work or lack of money is a "just cause" for layoff under G. L. c. 31, § 41. None of the parties contends otherwise.

The town claimed lack of money as justification for its action. The commission determined that the town did not lack money because it had over $500,000 in its reserve fund, which it simply chose not to expend, and that therefore the layoffs were unjustified. The commission's finding that the town had over $500,000 in its reserve fund is not contested, and there is no contention that any other subsidiary finding

of the commission was improper. The narrow question to be resolved is whether the existence of the reserve fund provided a legally adequate reason for the commission's conclusion that the town did not lack money. If the commission's conclusion constitutes legal error it is our duty to correct it, since it is the duty of this court in an action in the nature of certiorari to correct substantial errors of law that affect material rights and are apparent on the record. *Commissioner of Revenue* v. *Lawrence,* 379 Mass. 205, 208 (1979). *Commissioners of Civil Serv.* v. *Municipal Court of the City of Boston, supra* at 90.

General Laws c. 40, § 6, provides that a town, at an annual meeting, may appropriate a sum not exceeding five percent of the tax levy of the then current fiscal year as a reserve fund "[t]o provide for extraordinary or unforeseen expenditures." It is fairly arguable that salaries for the fire fighters were not extraordinary or unforeseen expenditures because explicit provision was made for them by town meeting appropriation, and that an unforeseen revenue shortfall was not contemplated by G. L. c. 40, § 6. It would be reasonable to conclude that the reserve fund was not available for the payment of those salaries. We need not decide that question, however, because we think that when a municipality makes a good faith nonarbitrary determination that its revenues will be less than was anticipated when the tax rate was set, thereby jeopardizing the town's ability to meet its total appropriation, there is a lack of money within the meaning of G. L. c. 31, § 41. The commission's findings and the fire fighters' and town's stipulation of good faith establish that such a determination was made and that the layoffs resulted from it. "The purpose of civil service legislation was to protect efficient public employees from partisan political control." *McNeil* v. *Mayor of Peabody,* 297 Mass. 499, 503-504 (1937), citing *Alger* v. *District Court of Brockton,* 283 Mass. 596, 598, 601 (1933). It was not designed to prevent a town from prudently managing its affairs, including the maintenance of a statutorily-authorized fund to meet its unforeseen needs. We have held that a

municipality may abolish a civil service position when, in the judgment of appropriate municipal officials, the position is no longer needed or economical. See *Commissioners of Civil Serv.* v. *Municipal Court of the City of Boston,* 369 Mass. 84, 88 (1975); *School Comm. of Salem* v. *Civil Serv. Comm'n,* 348 Mass. 696, 699 (1965); *Gardner* v. *Lowell,* 221 Mass. 150, 154 (1915). So, too, a municipality may temporarily separate a civil service employee from his or her employment when, in the judgment of its appropriate officials, anticipated revenues will be inadequate to pay the employee's salary as well as to meet other more pressing municipal needs.

The existence of the reserve fund was legally insufficient to support the commission's conclusion that the layoffs of the fire fighters were unjustified. The judgments of the Superior Court setting aside the commission's order are affirmed.

*Judgments affirmed.*