ROBERT A. JERMAIN *vs.* BOARD OF REGENTS OF HIGHER
EDUCATION[1] & another.[2]

Suffolk.   November 6, 1986. — January 27, 1987.

Present: GRANT, QUIRICO, & FINE, JJ.

*Public Employment,* Termination. *Contract,* Employment. *Due Process of
Law,* Termination of employment.

A hearing before the personnel committee of the Board of Regional Com-
munity Colleges, held within a reasonable time after the dismissal due
to budgetary limitations of a faculty member, was sufficient to satisfy
any applicable procedural requirements contained in the board's policy
and embodied in the faculty member's contract of employment, where,
although the board's policy suggested that the hearing be held before
termination, the faculty member made no showing of loss or prejudice
resulting from the circumstance that his dismissal had taken effect before
the hearing was held. [431-434]

. A hearing before the personnel committee of the Board of Regional Com-
munity Colleges, held within a reasonable time after the dismissal due
to budgetary limitations of a nontenured faculty member, was sufficient
to satisfy whatever due process requirements might arise from any pro-
tected property rights which the faculty member had in continuing his
employment for a one-year period. [434-435]

CIVIL ACTION commenced in the Superior Court on De-
cember 19, 1975.

The case was heard by *Cortland A. Mathers,* J., on a motion
for summary judgment.

*Maurice M. Cahillane* for the plaintiff.

*Carolyn V. Wood,* Assistant Attorney General, for the de-
fendants.

---

[1] The action was originally brought against the Board of Regional Com-
munity Colleges. That board was dissolved and its duties assumed by a
new agency, the Board of Regents of Higher Education, pursuant to St.
1980, c. 329, §§ 111, 112.

[2] The Commonwealth.

FINE, J. Robert A. Jermain, a nontenured associate professor at North Shore Community College who had been reappointed for the 1975-1976 academic year, was notified by the college president in late August of 1975 that budgetary limitations required that his employment be terminated, effective August 30, 1975. Jermain was rehired, effective November 15, 1975. In this action, originally brought against those who on the relevant dates were members of the Board of Regional Community Colleges (board), Jermain seeks back pay in the amount of $3,499, claiming that the termination violated his contractual rights and his constitutional right to due process.[3] He claims that he was entitled to a pretermination hearing before the members of the board. On cross motions for summary judgment and a statement of agreed facts, the Superior Court entered summary judgment for the defendants.

Jermain was first employed at North Shore Community College in a part-time position in 1971. Although he was not granted tenure, he became a full-time faculty member in 1972 and each spring he would receive an appointment for the next academic year. In due course, Jermain received a letter, dated March 28, 1975, from George Traicoff, president of North Shore Community College, inquiring whether he was interested in continuing his employment for the 1975-1976 academic year. Jermain returned the letter indicating that he intended to continue in his employment.

On August 20, 1975, the Legislature enacted the Interim Budget Act, St. 1975, c. 530, § 1, which reduced the total

---

[3] At the time Jermain filed this action in December, 1975, similar actions had been filed in the Superior Court in Suffolk, Worcester and Franklin Counties by eighteen other teachers who had been terminated from community colleges. All of those plaintiffs sought review under G. L. c. 30A, § 14, the State Administrative Procedure Act. Since all the actions involved the applicability of the State Administrative Procedure Act, counsel agreed to submit the issue on one case. The Superior Court entered summary judgment for the defendants, holding that there was no right under G. L. c. 30A to judicial review of a termination. The Appeals Court affirmed but indicated that the plaintiff could amend his complaint to state a claim which did not depend on G. L. c. 30A. *Massey* v. *Regional Community Colleges,* 11 Mass. App. Ct. 1033 (1981).

amount of funds allotted to community colleges for the 1975-1976 fiscal year by ten percent and provided for criminal penalties for any official who authorized excess expenditures. In accordance with the new fiscal realities and with written direction from the board to reduce academic personnel according to suggested criteria,[4] Traicoff informed Jermain by letter, dated August 27, 1975, that, effective August 30, 1975, he would be removed from his position. The stated reasons for his selection for removal were his untenured status and the reduced level of demand for courses in his department. Of the three professors in the department, Jermain was the only one who lacked tenure and the one with the least advanced academic degree.

Traicoff's letter and a subsequent letter from the board notified Jermain that he could request a hearing; he did so on September 5, 1975. On October 22, the personnel committee of the board, consisting of two of the board's sixteen members, and the personnel director, a nonmember, held a hearing on the termination. Jermain appeared with counsel and offered testimony and cross-examined opposing witnesses. The personnel director prepared a summary of the hearing for the personnel

---

[4] Board President Dwyer's August 15, 1975, memorandum to the community college presidents outlined the financial restrictions affecting the colleges from July through October of 1975 and proposed the following:

"SUGGESTED CRITERIA FOR PERSONNEL REDUCTION

"Basic Principle: top priority is delivery of educational services to students in state funded programs

"Order for determining lay-offs and/or terminations:

1. Non teaching personnel, professional and classified
2. Teaching personnel
   a. lowest student contact hours
   b. least productive on basis of evaluations, student success: least flexible in terms of qualifications to teach other subjects
   c. teaching in program or subject with below average enrollment or declining demand
   d. given equal conditions, tenured faculty will be given preference for retention over nontenured; between tenured faculty, seniority will be given preference."

committee; the committee in turn recommended to the board that Jermain be removed. After some discussion, the board adopted that recommendation.

1. *The contract claim.* The parties stipulated that the March 28, 1975, letter from Traicoff to Jermain and Jermain's affirmative response constituted a contract between the parties for Jermain's employment for the 1975-1976 academic year and that the reappointment was governed by the board's policies for professional staff appointment. There is no dispute that budgetary limitations required that some professional staff at North Shore Community College be terminated in August of 1975. Nor is there any dispute that the selection of Jermain as one of the individuals to be removed was made in good faith. Furthermore, Jermain does not challenge the general principle relied upon by the board that, in the absence of an express term to the contrary, there is an implied right in any agreement for employment as a public employee to terminate that employment on grounds of financial necessity. See *Debnam* v. *Belmont,* 388 Mass. 632, 635-636 (1983); *Nutter* v. *School Comm. of Lowell,* 5 Mass. App. Ct. 77, 79-80 (1977); *Jimenez* v. *Almodovar,* 650 F.2d 363, 368 & n.5 (1st Cir. 1981). Compare *Breslin* v. *School Comm. of Quincy,* 20 Mass. App. Ct. 74, 80-81 (1985). Termination in such circumstances is considered to be for "just cause." See *Debnam* v. *Belmont,* 388 Mass. at 634.

The question remains whether the procedural requirements included in the board's policy, and therefore in the employment contract, are applicable in the context of a termination of employment due to lack of funds. The board had adopted a policy entitled "Academic Freedom and Tenure in Massachusetts Community Colleges," which, by its terms, was to "remain in effect until amended or revoked by the Board." It was amended on May 9, 1975, and retitled "Appointment to Professional Positions in the Massachusetts Community Colleges."[5] The amended policy provides:

---

[5] Jermain contends that his rights were governed by the 1968 policy and not the 1975 policy because the 1968 policy was in effect in March, 1975, when the parties entered into the employment contract. The 1968 policy

"A person holding a professional appointment without tenure may, before the expiration of his/her term of appointment, be removed for just cause by action of the Board taken upon recommendation of the President of the college with the concurrence of the President of the Board of Regional Community Colleges, after consultation with the appropriate dean and department head or equivalent, and after notice to such person and an opportunity to be heard, as provided for persons with tenure."

Tenured personnel who have been recommended for dismissal have the right under the policy to notice and a hearing before the board "or a committee thereof." The board may act on the recommendation of the college president and the board president that the person be removed "[a]fter such hearing."

The question whether the hearing procedure outlined in the board's policy applies to a termination based on financial necessity turns on the reasonableness of such a construction in the circumstances. A hearing requirement usually serves the purpose of assuring a teacher faced with a charge of misconduct or incompetency an opportunity to defend himself by presenting his version of the facts or by demonstrating that the charge is a pretext for some improper purpose. The protection of a hearing, suitable for resolving such factual issues, may be unsuitable, however, in a case such as this. See *Jimenez* v. *Almodovar*, 650 F.2d at 369; *Hartman* v. *Providence*, 636 F. Supp. 1395, 1408 (D.R.I. 1986). The need for the public agency to act when there are insufficient funds available to pay an employee is likely to be immediate. Even so, the employee, facing the severe consequence of loss of employment, might view a hearing as a protection against unfairness and as a meaningful opportunity for him to attempt to persuade the decision maker that the budget cuts, however necessary, should be made in some way other than by terminating his employ-

provides the employee with more extensive procedural rights than does the later policy. Unlike the 1975 policy, the 1968 version incorporates some of the provisions of G. L. c. 30A, §§ 11 and 12. In view of the authorization in the 1968 policy for amendments, Jermain's position is without merit.

ment. See *Black* v. *School Comm. of Malden,* 365 Mass. 197, 205 (1974); *Milne* v. *School Comm. of Manchester,* 381 Mass. 581, 583 n.3 (1980); *Boston Teachers Local 66* v. *School Comm. of Boston,* 386 Mass. 197, 216 (1982); *Breslin* v. *School Comm. of Quincy,* 20 Mass. App. Ct. at 80-82; *Jimenez* v. *Almodovar,* 650 F.2d at 369 n.7; *Russell* v. *Harrison,* 562 F. Supp. 467, 470 (N.D. Miss. 1983), modified in part, 736 F.2d 283 (5th Cir. 1984). Compare *Nawn* v. *Selectmen of Tewksbury,* 4 Mass. App. Ct. 715, 718 (1976). It may be that the public agency, having extended to the employee some expectation of continued employment and having provided some procedural protections, ought to be put to the burden of justifying the termination of employment even if for lack of available funds. We are not compelled to resolve the issue of the applicability of the hearing provisions in the contract, however, because in this case, even if the provisions were applicable, there was no violation such as to entitle Jermain to the contract damages he is seeking.

Jermain first complains that his hearing was not before the board. The policy, however, authorizes a hearing before a committee of the board, and that is what he had; the personnel committee, two of whose three members sat on the board, heard his appeal.

Secondly, he claims that he did not receive the pretermination hearing to which he was entitled. The policy does suggest that the hearing should be held before termination, and the board concededly did not comply with that provision. Jermain, however, was not prejudiced in any way and suffered no loss as a result of the delay. He had a meaningful hearing within a reasonable time of his removal, and he was unable to establish at the hearing an absence of necessity for the termination or a lack of good faith. The clear evidence of a fiscal emergency and the use of appropriate guidelines, together with other indications of the board's good faith, lead us to conclude that strict compliance with the 1975 procedure would not have changed the result; Jermain simply would not have prevailed even if the hearing had been held prior to the effective date of his dismissal. Therefore, even if there was a technical departure

from the required procedure, it was of no significance to the substantial rights of Jermain, and he may not base a claim for contract damages on it. See *Jantzen* v. *School Comm. of Chelmsford,* 332 Mass. 175, 178 (1955); *Kaplan* v. *School Comm. of Melrose,* 363 Mass. 332, 336 (1973).

2. *The due process claim.* Jermain claims that he had a property interest in his one-year employment as a professor because during that period, according to his contract, he could not be removed except for just cause. See *Regents of State Colleges* v. *Roth,* 408 U.S. 564, 576-578 (1972); *Perry* v. *Sinderman,* 408 U.S. 593, 601-602 (1972); *Cleveland Bd. of Educ.* v. *Loudermill,* 470 U.S. 532, 538-540 (1985); *Barnett* v. *Housing Authy. of Atlanta,* 707 F.2d 1571, 1576-1577 (11th Cir. 1983). Compare *Milne* v. *School Comm. of Manchester,* 381 Mass. at 582-583; *Hartman* v. *Providence,* 636 F. Supp. at 1408. Accordingly, Jermain contends that he had a right to a meaningful hearing at a meaningful time. See *Mathews* v. *Eldridge,* 424 U.S. 319, 333 (1976); *Breslin* v. *School Comm. of Quincy,* 20 Mass. App. Ct. at 81.

We need not decide whether, in the circumstances, Jermain had a protectable property interest in his position, however, because we rule that the procedures employed by the board were more than adequate to meet the minimal requirements of due process. After fair notice, Jermain, represented by counsel, had a hearing before a committee of the board including two of its members and the personnel director. The delegation of authority by the board was not improper. See *Bates* v. *Sponberg,* 547 F.2d 325, 332-333 (6th Cir. 1976). Jermain had a full opportunity to present evidence, to cross-examine witnesses and to argue his position. A transcript of the hearing was prepared, and the personnel director composed a detailed summary of the evidence and the issues and contentions of the parties. Jermain does not contend that the summary was unfair or inaccurate. No issue of credibility emerged at the hearing. The board discussed the matter at a subsequent meeting and reached its decision in an apparently fair manner. It appears that the ultimate decision maker acted on personal understand-

ing and exercised independent judgment. See *Megill* v. *Regents of Florida,* 541 F.2d 1073, 1080 (5th Cir. 1976).

It was not a violation of due process that the hearing was held after Jermain's termination. *Cleveland Bd. of Educ.* v. *Loudermill,* 470 U.S. 532 (1985), on which Jermain relies to support his claim that he had a right to a pretermination hearing, involved a teacher charged with unsatisfactory performance. *Loudermill* required "some kind of hearing" prior to termination in such circumstances to determine whether there were reasonable grounds to believe the charges were true and to support the proposed action. A pretermination hearing, it was said, would serve as an initial check against an erroneous decision. Those considerations have limited application to a case in which a public employee is terminated on grounds of financial necessity. See and compare *Breslin* v. *School Comm. of Quincy,* 20 Mass. App. Ct. at 81-82; see also *Russell* v. *Harrison,* 562 F. Supp. at 469.

*Judgment affirmed.*