547 So.2d 1381 (1989)
Robert M. CASSE, Jr., Dave Besse, III, et al.
v.
Herbert L. SUMRALL, Department of State Civil Service, State Civil Service Commission, David L. Ramsey, the Department of Health and Hospitals, and Department of Social Services.
No. CA 890148.
Court of Appeal of Louisiana, First Circuit.
August 2, 1989.
*1382 Floyd J. Falcon, Jr., Daniel L. Avant, Mark E. Falcon, and Robert R. Boland, Jr., Baton Rouge, for plaintiffs-appellees.
Frank F. Perez, Atty. and Charles F. Castille, Bureau of Legal Services, Baton Rouge, for defendants-appellants.
Before CARTER, LANIER and LeBLANC, JJ.
LeBLANC, Judge.
The primary issue in this appeal is the constitutionality of the State Civil Service Rules relating to the procedure for laying off permanent, classified employees due to financial exigency.
Plaintiffs[1] are permanent, classified employees who were affected by a layoff plan *1383 approved by the Department of Civil Service and implemented by the Department of Health and Hospitals and/or the Department of Social Services[2] on August 5, 1988. Plaintiffs filed the present class action suit on that date seeking a judgment declaring the pertinent civil service rules unconstitutional and enjoining implementation of the layoff plan. Named as defendants were the Department of Civil Service and Herbert Sumrall, Director of Civil Service; the State Civil Service Commission; the Department of Health and Hospitals and David L. Ramsey, Director of the Department of Health and Hospitals; and, the Department of Social Services. The trial court scheduled a hearing on the matter for August 24, 1988.
Prior to the hearing, defendants filed exceptions of improper use of class action, lack of subject matter jurisdiction, lis pendens and prematurity. The trial court eventually denied each of these exceptions, as well as plaintiffs' request for a preliminary injunction. However, the trial court rendered judgment in favor of plaintiffs declaring State Civil Service Rule 17.2 and other rules governing layoff notice unconstitutional. Defendants have appealed alleging the trial court erred in denying their exceptions and in granting the declaratory judgment sought by plaintiffs.

EXCEPTIONS
Defendants argue that plaintiffs' suit in district court was premature because plaintiffs failed to first exhaust their administrative remedies. In this regard, defendants point out plaintiffs have filed an appeal of the disputed action with the Civil Service Commission and that the Commission has not yet decided that appeal. In Feder v. Pope, 498 So.2d 270 (La.App. 1st Cir.1986), this court held that the plaintiff, a classified civil servant, "did not need to exhaust the administrative review available to him prior to attacking the constitutionality of his discharge" on the basis that he was not given a pre-termination hearing as required by Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Feder, 498 So.2d at 271-2. In the present case, plaintiffs sought a declaratory judgment that certain Civil Service Commission Rules were unconstitutional.[3] The Commission can not grant this relief because it has no jurisdiction to decide the constitutionality of its own rules. Clark v. Department of Transp. & Development, 413 So.2d 573 (La.App. 1st Cir.1982). Accordingly, under the circumstances present herein, the trial court did not err in denying defendants' exception of prematurity.
Defendants also argue the trial court had no subject matter jurisdiction over plaintiffs' suit because La. Const. Art. 10, § 12(A) grants the Civil Service Commission exclusive jurisdiction to hear and decide all removal cases. This argument is without merit since this constitutional provision confers no jurisdiction upon the Commission to render a declaratory judgment regarding the constitutionality of its own rules. See, Clark, supra. Therefore, the trial court clearly had jurisdiction to render the declaratory judgment at issue herein.[4]
We likewise find defendants' exception of lis pendens to be without merit. In *1384 order for an exception of lis pendens to be sustained, it must be established that two suits are pending between the same parties in the same capacities, having the same object and based on the same cause of action. La.Code Civ.P. art. 531; Best Homey Partnership v. Sun, 470 So.2d 886 (La.App. 1st Cir.1985). In this case, even assuming the other requisites are met, the two "suits" involved have different objects; one is a suit resulting in a declaratory judgment and the other is a civil service appeal seeking reinstatement and backpay. See, Best Homey Partnership, supra. Thus, the trial court correctly denied this exception.
Lastly, defendants assert the trial court erred in denying their exception of improper use of class action. La.Code Civ.P. arts. 591(1) and 592 establish the basic requirements for a class action.
1. A class so numerous that joinder is impracticable;
2. The joinder as parties to the suit of one or more persons who are:
(a) members of the class, and
(b) so situated as to provide adequate representation for absent class members, and
(c) a "common character" among the rights of the representatives of the class and the absent class members.
McCastle v. Rollins Environmental Services, 456 So.2d 612, 616 (La.1984). There is no set number of class members which automatically makes joinder impractical. O'Halleron v. L.E.C., Inc., 471 So.2d 752 (La.App. 1st Cir.1985). This determination must be made on the facts and circumstances of each case. Id.
The requirement of a common character restricts the class action to cases in which its use would achieve economics of time, effort, and expense and promote uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. McCastle, supra; Terrebonne Bank & Trust Co. v. LaCombe, 510 So.2d 78 (La.App. 1st Cir.1987). Where a "common character" of rights exists, a class action is superior to other adjudicatory methods because it promotes the basic aims and goals of: 1) effectuating substantive law; 2) judicial efficiency; and 3) individual fairness. McCastle at 616.
The trial court has great discretion in deciding whether a suit should be certified as a class action. The trial court's decision should not be disturbed in the absence of manifest error. This is so because, if the decision to certify or not requires consideration of policy matters in addition to the existence of a common question on law or fact, wide latitude must be given to the trial court which considers those matters. Terrebonne Bank & Trust Co., supra; Bergeron v. Avco Financial Services of N.O., 468 So.2d 1250 (La.App. 4th Cir.) writ denied, 474 So.2d 1308 (1985).
In the instant case, we find no abuse of discretion or manifest error in the trial court's certification of the present suit as a class action. The facts and circumstances present are sufficient to meet all of the requirements of a class action. Further, allowing this matter to proceed as a class action clearly meets the policies of judicial efficiency and fairness since there is a "common character" among the rights of all class members and each member's position is based on a common issue of law. Thus, we find no error in the certification of this suit as a class action.

DUE PROCESS CLAIM
Plaintiffs contend the Civil Service Rules under which the disputed layoff plan was prepared and implemented violated their due process rights because these rules did not accord them adequate notice or the right to a pre-deprivation hearing.
Under Civil Service Rule 17.2, a permanent, classified employee who is to be laid off is entitled to notice as follows:
(a) The appointing authority shall, as soon as it is determined that a layoff or a layoff avoidance measure is necessary, make a reasonable attempt to notify all employees in the area(s) to be affected. If it is known that a layoff or layoff avoidance measure will be required, but the area(s) to be affected *1385 has not been determined, then a reasonable attempt to notify all employees that they may be affected shall be made.
(b) Once a layoff plan or layoff avoidance plan is approved by the Director [Department of Civil Service] it shall be made generally available to employees in that agency. (emphasis added)
Further, although the Civil Service Rules do not provide for a pre-deprivation hearing, Rule 13.10(m) does provide a laid off employee the right to a post-deprivation hearing through an appeal to the Civil Service Commission.
Both the United States Constitution and the Louisiana Constitution provide that an individual can not be deprived of property without due process of law. U.S. Const. Amend. 14; La. Const., Art. 1, § 2. Since a permanent, classified civil service employee has a property interest in retaining his job, his position may not be changed or abolished without due process of law. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); Bell v. Dept. of Health and Human Resources, 483 So.2d 945 (La.1986), cert. denied, 479 U.S. 827, 107 S.Ct. 105, 93 L.Ed.2d 55 (1986). Exactly what process is due is dependent upon the peculiar facts involved. Bell, supra. Due process is not a technical concept with a fixed content unrelated to time, place and circumstances. It is a flexible standard which requires such procedural safeguards as a particular situation demands. Id. However, the fundamental requirement of due process is notice and the opportunity to be heard at a meaningful time and in a meaningful manner. Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The primary purpose of the required notice is to apprise the affected individual of, and permit adequate preparation for the requisite hearing. Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978).
A determination of whether due process requires that classified civil service employees to be laid off, reassigned to another position or demoted as a result of financial exigency are entitled to a pre-deprivation hearing is dependent upon a balancing of the following three factors:
1) the private interest affected by the official action,
2) the risk of an erroneous deprivation of such interest through the procedures utilized, and the probable value, if any, of additional procedural safeguards; and,
3) the State's interest, including the fiscal and administrative burden that additional procedural requirements would necessitate.
Mathews v. Eldridge, supra; Bell, supra.
Plaintiffs rely heavily on Cleveland Bd. of Educ. v. Loudermill, to support their argument that due process required they be given a pre-deprivation hearing. In Loudermill, the plaintiff, a classified civil servant, was dismissed for dishonesty in filling out his job application. He was not given an opportunity to respond to the charge or to challenge the dismissal. After weighing the three Mathews factors listed above, the Court concluded the plaintiff was entitled to notice of the charges against him, an explanation of the evidence against him, and an opportunity to defend himself at a pre-termination hearing.
Two Louisiana cases in which the Loudermill holding was considered and found not applicable are Bell v. Dept. of Health & Human Resources, supra, and Firefighters Local 632 v. Civ. Service Com'n, 495 So.2d 958 (La.App. 4th Cir.1986), writ denied, 499 So.2d 84 (La.1987). In Bell, plaintiffs were classified civil service employees whose positions were reallocated without allowing them an opportunity to challenge the reallocation before it was implemented. The Louisiana Supreme Court found that a number of considerations pertinent in disciplinary actions such as that in Loudermill were not present in a reallocation situation. For instance, while the Court found that the private interests at stake were similar in both situations, it found there was far less risk of an erroneous deprivation in a reallocation situation than in a disciplinary action. The court also concluded that any benefit to employees *1386 resulting from a requirement of pre-deprivation notice and a hearing in reallocation cases was outweighed by the heavy burden it would place on the civil service system. Thus, the Court concluded that the employees' right to a post-reallocation review, as provided in the Civil Service Rules, was sufficient to meet the requirements of due process.
In Firefighters Local 632, a large number of classified city civil service employees were laid off for budgetary reasons. They appealed alleging that their due process rights had been violated because they were not given a pre-termination hearing. In considering the three-prong Mathews balancing test, the Fourth Circuit's conclusions with regard to layoff situations paralleled those made by the Supreme Court in Bell with regard to reallocations. Upon weighing these factors, the Fourth Circuit held that a pre-termination hearing was not required before employees were laid off.
Applying the Mathews factors to the present case, we initially note that the interests of the affected employees are not all identical. Some of these employees were moved to new positions without a reduction in pay, some were moved with a reduction in pay, and others lost their jobs altogether. The interests of each group is significant, although the interest of those losing all or part of their salaries is obviously the more substantial. Cf. Cleveland Bd. of Educ. v. Loudermill, supra; Bell, supra. "Courts have frequently recognized the severity of depriving a person of income." Bell, supra at 950. However, it should be noted that the deprivation suffered by employees terminated for financial reasons is less than that of employees terminated for cause, since the former employees are entitled to receive unemployment compensation, while the latter generally are not. Further, no stigma such as that which attaches to employees terminated for cause, attaches to employees laid off for financial reasons. See, Walker v. Personnel Advisory Bd. of State, 670 S.W.2d 1, 4 (Mo.App.1984); Murchison, Local Government Law, 48 La.L.Rev. 303, 326 (1987). Consequently, it is usually easier for laid off employees to procure new employment. See, Cleveland Bd. of Educ. v. Loudermill, supra at 1494; Murchison, supra.
The second factor to be considered is the risk of an erroneous decision. This risk is much less in cases involving reassignments, demotions and layoffs for financial reasons than in cases involving actions taken for disciplinary reasons. In Bell, the Louisiana Supreme Court discussed this factor with respect to a reallocation of employees. We think the considerations and distinctions drawn in Bell with regard to reallocations are equally applicable to situations involving reassignments, demotions and layoffs due to financial necessity.
... [T]he similarity between reallocations and disciplinary actions ends when one considers the mechanics of both as they relate to the chance for an erroneous decision. Unlike disciplinary actions, a reallocation is not the result of an evaluation of the job performance of an employee. It does not center on any facts surrounding the employee whatsoever. A reallocation is the result of an internal decision made by the Director.... Procedural due process concerns are lessened in a reallocation situation as opposed to a disciplinary action....
In disciplinary actions, due process concerns are heightened since the focus in such actions is in the individual employee. Evidence is taken, and the Director then enters a decision based on his findings. Meaningful procedural due process notions are furthered by allowing pre-deprivation (disciplinary action) notice in writing setting forth the causes for the action, and an opportunity to be heard. By providing an employee with these minimal procedural protections, an employee can prepare a defense, call witnesses on his own behalf, testify himself, and cross examine opposing witnesses. These protections diminish the possibility of an erroneous deprivation prior to its occurrence. Such concerns are not meaningful in a reallocation.
As alluded to, in a reallocation, there is no evidence taken. There are no witnesses, *1387 and the employee need not prepare a defense. The Director determines if reallocation is warranted.... At this point in the procedure, no meaningful application of the due process notions of notice and opportunity to be heard would be gained. See Cleveland Board of Education, supra. It is when the focus of the reallocation changes to considerations of the employee (i.e. allegations of discrimination), or when there are allegations of a Rules violation, that notice and an opportunity to be heard crystalize into something meaningful. Article I, § 2 would require that at this point there be these minimal procedural protections.
The Civil Service Rules satisfy Article I, § 2 in that they do provide for a review of the Director's actions by a neutral decisionmaker upon allegations of discrimination and/or a Rules violation. It is at this point that the neutral decisionmaker can assure that an employee's substantive due process rights have not been deprived without just cause. 483 So.2d at 950-51. (footnote omitted)
It is significant that the layoff plan at issue was formulated on the basis of administrative decisions which were made after careful review of the needs and priorities of the department involved and not upon the performance of individual employees. Due to the nature of these decisions and the other considerations discussed above, we believe the risk of an erroneous deprivation is minimal. Thus, this factor does not weigh in favor of requiring a pre-deprivation hearing in instances where reassignments, demotions or layoffs are made for financial reasons.
Finally, we must consider the State's interest, including the fiscal and administrative burdens which would be imposed upon it by requiring a pre-deprivation hearing in each case of reassignment, demotion, or termination due to financial necessity. In the present case, one hundred forty-seven employees were ultimately affected by the implementation of the layoff plan. The financial and administrative burden of allowing each of these employees a pre-deprivation hearing obviously would be substantial.
We disagree with the trial court's conclusion that only one mass pre-deprivation hearing would be necessary for all affected employees. In its written reasons for judgment, the trial court envisioned that such a meeting would give the employees a "collective opportunity to ventilate and communicate their ideas to the Director of Civil Service and the appointing authority...." We agree that such a meeting would give the affected employees a chance to "ventilate" their feelings. However, we can not agree that if employees do, in fact, have a right to a pre-deprivation hearing, that such a mass meeting would afford them any meaningful protection of their rights. Only in individual hearings could the full facts and circumstances relevant to each employee's position be considered.
Further, if the State were obliged to hold a pre-deprivation hearing for each employee, the cost of this procedure, as well as the cost of maintaining the employee's job until the process was complete, would only serve to worsen the State's financial position. This could necessitate even more layoffs than originally planned. As did the Supreme Court in Bell, we conclude that any benefit to employees which might result from requiring pre-deprivation notice and a hearing would be far outweighed by the substantial burden it would place on the State.
To summarize our consideration of the pertinent factors, we have concluded that: 1) while the private interest of the employees at stake herein is substantial and the impact on it quite significant, the impact is not as great as it is in the case of a dismissal for cause; 2) the risk of an erroneous decision in a situation such as the present one is minimal, and; 3) the financial and administrative burden which would be placed on the State by a requirement of a pre-deprivation hearing would be severe. Accordingly, for these reasons, we hold that the dictates of due process do not require that employees be given a pre-deprivation hearing in a situation such as the present one, where there is an opportunity for a post-deprivation hearing before a neutral *1388 decisionmaker. See, Bell, supra; Firefighters Local 632, supra; Murchison, supra at 326. Accord, Reed v. Vocational-Technical School, 112 Pa.Cmwlth. 529, 535 A.2d 1229, appeal granted, 518 Pa. 652, 544 A.2d 963 (1988); Jermain v. Board of Regents of Higher Educ., 23 Mass.App.Ct. 428, 503 N.E.2d 50 (1987); Breslin v. School Committee of Quincy, 20 Mass. App.Ct. 74, 478 N.E.2d 149, appeal denied, 395 Mass. 1102, 481 N.E.2d 197 (1985); Refai v. Central Washington University, 49 Wash.App. 1, 742 P.2d 137 (1987); Walker v. Personnel Advisory Bd. of State, 670 S.W.2d 1 (Mo.App.1984).
Having concluded no pre-deprivation hearing was required, we now consider whether the notice provided by the Civil Service Rules adequately meets due process requirements. Rule 17.2(a) requires that a "reasonable attempt" be made to notify all affected employees as soon as it is determined that a layoff is necessary. The rules do not require a minimum amount of notice.
In the present case, preparation of the layoff plan was completed sometime between late June and mid-July of 1988. The evidence shows that employees, in the area to be affected were given general information that a layoff was imminent through a series of meetings with departmental officials sometime in late June to mid-July. However, they were not told specifically which positions were targeted for elimination or who would be affected.
Under Civil Service Rule 17.14(b), once a layoff plan is formulated by a state agency, it must be submitted to the Director of the Department of Civil Service for approval. The Director can recommend that the plan not be approved or can sometimes cause changes to be made in it. The layoff plan at issue was submitted to the Director for approval on July 14, 1988 and was approved by letter dated July 22, 1988. At that time, written notices were sent that the layoff would be effective August 5, 1988. However, not everyone who was affected received notice at this time, because it was not then clear who would be affected or how they would be affected.
For instance, although the disputed layoff plan eliminated nearly one hundred classified civil service positions, the employees holding these positions were not necessarily laid off. Under certain circumstances, Civil Service Rule 17.17, permits a permanent, classified employee whose position has been eliminated to displace another employee in an equivalent or lower job if the former employee has more state service than the latter. The displaced employee, in turn, may be entitled to displace another employee with even less state service than he. This process is referred to colloquially as "bumping". Thus, some employees whose positions were not eliminated in the plan were nevertheless bumped from their position and laid off. A total of one hundred forty-seven (147) employees were ultimately affected by the implementation of the plan at issue herein.
The process of determining who can bump whom is complex and time-consuming. Only one individual can be processed at a time since one person's decision whether to accept an offered position directly affects what positions might be offered to other employees. The entire procedure is designed to insure that those employees with the longest amount of state service retain their employment.
Unfortunately, this process results in some employees receiving very short notice. While this situation is regrettable and it certainly would be preferable for all affected employees to receive more notice, we can not say that the overall scheme violates the mandates of procedural due process. Nevertheless, although we conclude that the rules meet minimum constitutional requirements, nothing therein would prohibit the Commission from adopting new rules providing earlier and more comprehensive notice to affected employees.
Plaintiffs argue that they should have been given notice of the positions to be terminated even before the layoff plan was approved by the Director. An administrative decision was made and the Civil *1389 Service Rules require that notice be given only after the layoff plan is approved. Such a rule is reasonable, particularly in view of the fact that the plan could be altered prior to its final approval, resulting in any notice given prior thereto being inaccurate. We do not believe due process requires such pre-approval notice.
For the above reasons, the judgment of the trial court is reversed and plaintiffs' suit is dismissed. Plaintiffs are to bear all costs.
REVERSED.
CARTER, J., concurs.
NOTES
[1] The plaintiffs named individually and as representatives of the class were: Robert M. Casse, Jr., Carolyn J. Sarafyan, Robert Raby, Joan McDonald, Dave Besse, III, Mike Barbier and G. George T. Bigelow.
[2] Acts 1988, 1st Extraordinary Session, No. 1, abolished the Department of Health and Human Resources and decreed that its duties and functions be divided between the newly created Department of Health and Hospitals and the Department of Social Services. The act specified that the reorganization be fully implemented no later than July 1, 1989. At the time involved herein, the transition was ongoing and not yet fully implemented.
[3] In their petition, plaintiffs also sought an injunction and reinstatement to their position, as well as other relief. However, for purposes of this appeal, we need only consider the propriety of the trial court rulings with regard to the request for a declaratory judgment, since this was the only relief the trial court granted and plaintiffs have not appealed the denial of other relief.
[4] We express no opinion as to whether the trial court had jurisdiction to grant plaintiffs any of the other relief prayed for, since the judgment appealed from grants no such relief.