GEORGE SHAW *vs.* BOARD OF SELECTMEN OF MARSHFIELD & another.[1] No. 92-P-1456. March 2, 1994. *Municipal Corporations,* Officers and employees, Municipal finance. *Public Employment,* Termination.

Although this action by a former employee of the town of Marshfield was pleaded, in the first line, as an application for mandamus to compel the appointing authority (the board of selectmen) to reinstate him in his position, it is better viewed — as all now seem to agree — as an action testing his right to a hearing before that authority.

George Shaw was a non-civil service, nonunion, at will employee who, commencing in 1983, worked in the town's purchasing department under the direction of the town administrator (see town charter, art. 4.7.2[3] for that official's duty). Shaw held the position of "administrative assistant," at first in grade 10, later in grade 11. The salary for the job appeared regularly in the budget provided for the town's board of selectmen.

A town election in November, 1988, rejected a proposal to "override" Proposition 2 1/2 (St. 1980, c. 580). Accordingly, it became necessary for the town to reduce proposed expenditures. The draft budget for the board of selectmen for fiscal year 1990 showed a total for salaries of $131,000. At a town meeting in spring, 1989, the chairman of the town's advisory board (in effect a finance committee) advised the meeting to reduce that budget figure, and the meeting voted $100,021 instead. It is reasonably clear from the testimony in the action that the meeting (attended by Shaw) understood that the reduction contemplated the "unfunding" of Shaw's position. We note that the amount of the voted reduction was the amount of Shaw's salary, $30,979. The board of selectmen terminated Shaw's employment on June 30, 1989. Hence the present action. Upon

---

[1]Town of Marshfield.

nonjury trial,[2] a judge of the Superior Court made findings for the defendants and denied relief. We reach the same conclusion.

Shaw argued that he was denied a hearing and related procedural advantages that were owing to him before he was terminated. He cited art. 8.2.1 of the town charter. This states that "any appointed salaried employee of the town, not subject to the provisions of the state civil service law, whether appointed for a fixed or an indefinite term, may be suspended or removed from office by the appointing authority for good cause. The term cause shall include but not be limited to the following: Incapacity other than temporary illness, inefficiency, absenteeism, insubordination and conduct unbecoming the office." Article 8.2.3 provides that the appointing authority when "removing" an employee shall follow a stated procedure: The employee receives a written notice of intent to remove and a statement of the cause therefor; the employee may request a public hearing at which he may be represented by counsel and call witnesses; following the hearing, the appointing authority takes final action.

The trial judge found that "Shaw was not suspended or removed from office for cause contemplated by Art. 8.2 of the Town Charter but rather he was terminated for lack of money due to economic conditions prevailing in the town which seriously affected its fiscal situation." The finding was correct, giving "removal" its evident meaning, especially as borne out by the examples of "cause" set out in the text of art. 8.2.1 — incapacity, inefficiency, etc. The unfunding of a position for budgetary reasons was not of that character.

In comparable situations, it has been decided that a good faith administrative determination of lack of funds or, in school cases, diminished enrollment, is a valid basis for the consequent termination of employment. See *Boston Teachers Union, Local 66* v. *School Comm. of Boston*, 386 Mass. 197, 214-216 (1982). Cf. *Debnam* v. *Belmont*, 388 Mass. 632, 634 (1983).[3] It has also been consistently held that terminations of these sorts are not subject to the statutory procedures customarily provided for cases where an appointing authority intends to terminate an employee for what amounts to job performance. The trial judge cited the leading case of *Boston Teachers Union, Local 66* v. *School Comm. of Boston, supra*. It dealt with tenured teachers. The court held that the procedures of hearing, etc., afforded to such a teacher by G. L. c. 71, § 42 (as amended through St.

---

[2]The plaintiff testified on his own behalf; for the defendants there was testimony by the town administrator under whom Shaw served and by the chairman of the advisory board.

[3]Good faith is not doubted in the present case; it is not suggested that the claimed lack of funds was merely a pretext for terminating Shaw's employment.

The cases often say that lack of funds is a "cause" or "good or just cause" for terminating an employment, see *Jermain* v. *Regents of Higher Educ.*, 23 Mass. App. Ct. 428, 431 (1987), but that shorthand expression of course does not foreclose the question whether any particular procedure is to be used in effecting a termination on that ground.

1972, c. 464, § 2), when the school committee proposed to "dismiss" him or her for "inefficiency, incapacity, conduct unbecoming a teacher . . ., insubordination or other good cause," were not pertinent and did not apply to a termination for financial stringency. Also illustrative of the point are *Lane* v. *School Comm. of Paxton*, 378 Mass. 794 (1979); *Milne* v. *School Comm. of Manchester*, 381 Mass. 581, 582 (1980); *Martin* v. *School Comm. of Natick*, 393 Mass. 430, 435 (1984), cert. denied sub nom. *Martin* v. *Crain*, 471 U.S. 1077 (1985); *Haskell* v. *School Comm. of Framingham*, 17 Mass. App. Ct. 628, 631 (1984); *Breslin* v. *School Comm. of Quincy*, 20 Mass. App. Ct. 74, 80 (1985); *Jermain* v. *Regents of Higher Educ.*, 23 Mass. App. Ct. 428, 431 (1987). See also *Hockney* v. *School Comm. of Lynn*, 747 F.2d 50, 52 (1st Cir. 1984). Cf. *Sherman* v. *School Comm. of Whitman*, 26 Mass. App. Ct. 903, 904 (1988).

The cases of *Debnam* v. *Belmont*, 388 Mass. at 634-636, and *Gloucester* v. *Civil Service Commn.*, 408 Mass. 292, 299-301 (1990), develop the meaning of lack of funds when proffered as a justification for layoffs or terminations: The court stresses that municipal officials must be allowed a range of discretion in identifying the particular budgetary reductions to be made in response to an expected shortfall of money. It would be a rare occasion when a court would undertake to reexamine an official choice made in good faith; and here the town meeting itself, upon advice, pointed to the particular item in the budget of the board of selectmen that was to be cut.

The plaintiff attempted an argument based on the charter provision (art. 10.5) that adopted G. L. c. 41, § 103. This section states that a town which accepts it "may establish a purchasing department, to consist of a purchasing agent and such assistants as the . . . selectmen may determine." Argument over the charter adoption threw little light on the precise issue in the present case.

The plaintiff made constitutional claims under G. L. c. 12, §§ 11H-11I, and 42 U.S.C. § 1983 (1988). It will be enough to say that, as shown above, the plaintiff "has no legitimate claim of entitlement to continued employment" in the face of an administrative determination of lack of funds; "[t]hus, [he] had no constitutional right to notice and hearing prior to his termination." *Milne* v. *School Comm. of Manchester*, 381 Mass. at 583.

*Judgment affirmed.*

*Frank J. McGee* for the plaintiff.
*Richard E. Brody* for the defendants.