RICHARD S. ABRAMOWITZ vs. DIRECTOR OF THE DIVISION OF EMPLOYMENT SECURITY & another.[1]

Middlesex. May 5, 1983. — September 16, 1983.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Employment Security*, Eligibility for benefits, Findings by hearing examiner.

The findings of a hearing examiner in the Division of Employment Security, including a finding that the claimant initiated his own separation by advising his corporate partner that he intended to leave the corporation due to dissatisfaction with business losses, were supported by substantial evidence, justifying a decision by the division that the claimant had left voluntarily without good cause and was disqualified from receiving unemployment compensation benefits for the period in question under G. L. c. 151A, § 25 (*e*). [172-173]

There was no merit to an unemployment compensation claimant's contentions that any alleged resignation he tendered was ineffective because he had failed to comply with the requirements of a company by-law respecting resignations by officers, and that consequently a decision of the Division of Employment Security to deny him benefits under G. L. c. 151A, § 25 (*e*), was based upon an error of law. [173-174]

CIVIL ACTION commenced in the First Southern Middlesex Division of the District Court Department on August 11, 1981.

The case was heard by *Tuttle, J.*

*William H. Baker* for the employee.

*Paul E. Stanzler* for the employer.

*George J. Mahanna*, Assistant Attorney General, for Director of the Division of Employment Security, was present but did not argue.

---

[1] The Casual Female, Inc.

O'CONNOR, J. The plaintiff, Richard Abramowitz, appeals from a judgment of a District Court which affirmed a decision of the Division of Employment Security (division) denying the plaintiff unemployment compensation benefits. The appeal was brought directly to this court pursuant to G. L. c. 151A, § 42. The plaintiff argues that the judgment of the District Court should be reversed because the division's denial of benefits was arbitrary, capricious, and unsupported by substantial evidence. He also asserts that the division's decision to deny benefits was based upon an error of law. We disagree with all the plaintiff's contentions. Accordingly, we affirm the judgment of the District Court.

We summarize the relevant evidence presented at the hearing held before a hearing examiner of the division on May 8, 1981, and June 8, 1981.[2] The plaintiff and Edward Tucker founded a company called The Casual Female, Inc., in July, 1979, for the purpose of selling women's apparel through a chain of already existing retail stores. By the fall of 1980, the corporation showed an operating loss of $700,000. At all times material to the present controversy, the plaintiff was a 50 per cent shareholder of The Casual Female, Inc., and was president and chief executive officer. Tucker was the treasurer and the other 50 per cent shareholder. At the time of incorporation, the plaintiff and Tucker entered into a subscription agreement whereby the plaintiff agreed to purchase approximately $18,000 of Class B nonvoting stock by December 15, 1980.

The plaintiff gave the following testimony. In the middle or at the end of November, 1980, he informed Tucker that he would be selling his shares of stock in the company back to the company as he was permitted to do by the terms of the agreement. He had decided to sell his shares of stock back to the company because of certain disputes he had had with Tucker. These disputes arose because the plaintiff

---

[2] The board of review of the division denied the plaintiff's application for further review on July 15, 1981.

believed that Tucker had been improperly charging certain expenses to The Casual Female, Inc., which should have been charged instead to other related companies owned by Tucker. When he informed Tucker that he would be selling back his shares of stock, the plaintiff also mentioned that he "probably at some future date would be leaving" the employment of the company. However, he never told Tucker that he was resigning nor did he tender a written resignation.

The plaintiff also testified that he spoke with his attorney before actually tendering his shares of stock to the company. His attorney informed him that he could sell his stock in the company under the governing corporate agreements without having to resign his employment. As a consequence, he had a subsequent conversation with Tucker in which he said that "any conversation that transpired between the two of us was in no way . . . an indication that I was resigning." The plaintiff explained to Tucker that his decision to sell back his shares of stock was separate from his employment. The plaintiff further testified that at this time Tucker responded by saying, "You told me you were leaving."

On December 5, 1980, the plaintiff formally tendered his shares of stock to the company. On the same day, the plaintiff's attorney wrote to Tucker's attorney and informed him that the plaintiff intended to continue to work for the company and that his decision to sell back his shares of stock was not a resignation.

The plaintiff testified that Tucker then attempted to force the plaintiff out of the company. At some point, Tucker told other employees of the company that the plaintiff was leaving the company. On December 10, 1980, Tucker sent the plaintiff an office form which indicated that the plaintiff had voluntarily resigned and that his last day of work would be December 12, 1980.

On approximately December 8, 1980, Tucker's attorney inquired whether the plaintiff intended to purchase the shares of stock as provided in the subscription agreement.

The plaintiff's attorney responded at that time, and by letter dated December 15, 1980, that the plaintiff's decision to sell back his shares of stock terminated any obligations he had under the subscription agreement.  By letter dated December 16, 1980, Tucker informed the plaintiff that his failure to buy the shares of stock in accordance with the subscription agreement constituted a breach of the agreement.  The letter further stated:  "As a consequence of your breach you are no longer employed by The Casual Female, Inc., your salary is terminated as of the date hereof, and office space shall no longer be provided to you."  When the plaintiff arrived at his office on December 17, 1980, he was treated as though he were no longer an employee and, during the course of the day, discovered that all of his belongings had been removed from his office.

In March, 1981, the plaintiff received a notice from The Casual Female, Inc., that it intended to hold a special meeting of the shareholders for the purpose of removing him without cause from office as a director of the corporation. The plaintiff received another letter from The Casual Female, Inc., indicating that he had been removed as a director and that, at a directors' meeting following the special stockholders' meeting, he had been removed as president of the corporation.

Tucker remembered the encounter with the plaintiff in mid-November, 1980, differently than did the plaintiff. Tucker testified that in mid-November, the plaintiff went into Tucker's office and said, "I promised you I would let you know first and I am leaving. . . [T]his company's going nowhere.  We had a loss of about $700,000, I can't see where we're going to make it and I'm going to resign." Tucker testified that the plaintiff said he would be gone within a month.  Tucker also testified that during the conversation the plaintiff suggested that Tucker hire a replacement for him and offered some suggestions on how to obtain a replacement.  Tucker also denied that the plaintiff spoke with him on a second occasion to clarify that he was not resigning.

1. The plaintiff argues that the decision of the division denying him unemployment compensation benefits was arbitrary, capricious, an abuse of discretion, and unsupported by substantial evidence. See G. L. c. 30A, § 14 (7). The division denied the plaintiff's application for benefits on the basis of G. L. c. 151A, § 25 (e), as appearing in St. 1975, c. 684, § 78, which provides that no benefits shall be paid to an individual who has left his work "voluntarily without good cause attributable to the employing unit or its agent." The hearing examiner specifically found "that the [plaintiff] initiated his own separation when in November, 1980 he advised his corporate partner that within 30 days he intended to leave the corporation due to dissatisfaction with business losses, that he then proceeded to exercise his option to sell his shares of stock back to the corporation, that he then refused to buy shares of common stock in accordance with a subscription agreement, and that he then sought new employment as an employee of others."

We review the division's decision by applying the substantial evidence standard of review. G. L. c. 151A, § 42. G. L. c. 30A, § 14 (7). See *Trustees of Deerfield Academy v. Director of the Div. of Employment Sec.*, 382 Mass. 26, 31 (1980). The plaintiff argues that certain evidence precludes a finding that he voluntarily resigned, including: (1) his testimony that he never explicitly told Tucker that he was resigning and that he later clarified to Tucker that he did not intend to resign, (2) his attorney's letters written to Tucker's attorney stating that the plaintiff did not intend to resign, (3) Tucker's purported firing of the plaintiff on the ground that he breached the subscription agreement, (4) Tucker's actions on December 17, 1980, in removing the plaintiff's belongings from his office and (5) Tucker's actions in 1981 in removing the plaintiff as a director and as president. We disagree. The evidence about the nature of the plaintiff's departure from his employment as president and chief executive officer of The Casual Female, Inc., consisted principally of conflicting oral testimony. Tucker testified that in mid-November the plaintiff unequivocally

told him that he intended to terminate his employment in one month. Tucker further stated that the plaintiff never engaged in a second conversation where he allegedly "clarified" that he did not intend to resign. The hearing examiner was free to believe Tucker's testimony and to disbelieve that of the plaintiff. Furthermore, none of the subsequent events or communications, including the letters from the plaintiff's attorney, vitiates the propriety of the hearing examiner's conclusion. The hearing examiner could find that Tucker accepted the plaintiff's notice of resignation and that the letters from the plaintiff's attorney did not render ineffective either the plaintiff's initial notice of resignation or Tucker's acceptance thereof. "The responsibility for determining the credibility and weight of . . . testimony rests with the hearing officer . . . ." *Trustees of Deerfield Academy, supra* at 31. "If the findings are . . . supported [by evidence], it is not open to the District Court or to this court to substitute other views as to what should be the determination on the facts." *Martin v. Director of the Div. of Employment Sec.*, 347 Mass. 264, 268 (1964), quoting *Wagstaff v. Director of the Div. of Employment Sec.*, 322 Mass. 664, 667 (1948). Viewing the entirety of the evidence, we conclude that the hearing examiner's findings are supported adequately in the record.

2. The plaintiff next asserts that the division's decision is based upon an error of law. He argues that under section 4 of Article Fourth of the company's by-law, the only way that he could resign as president was by submitting a written resignation to the board of directors. Section 4 of Article Fourth provides: "Any officer may resign by delivering his written resignation to the corporation at its principal office or to the President or Clerk, and such resignation shall be effective upon receipt unless it is specified to be effective at some other time . . . ." Thus, the plaintiff argues, even if he had told Tucker in mid-November, 1980, that he was resigning, such resignation would have been entirely without effect because it was not written and because he informed only the treasurer and not the board of directors. We disagree.

First, it is clear that the provision in the by-law that requires notice of resignation to be written is a requirement designed to protect the company and to ensure that it receives adequate notice. Resignation without compliance with this provision may have violated the plaintiff's contractual duty, but it nevertheless was a resignation which the company was free to accept. Cf. *Karras* v. *Trione*, 135 Colo. 229, 235 (1957) (where employment agreement provided that notice of termination be in writing, failure to comply will not result in liability of employee where employer waives requirement by receiving oral notice and acting on it).

Second, the plaintiff's argument that any alleged resignation was ineffective because he gave it to the treasurer of the company and not to the board of directors is also without merit. The record discloses that only Tucker and the plaintiff were on the board of directors. Therefore, by tendering his resignation to Tucker, the plaintiff effectively tendered his resignation to the board of directors.

Thus, we conclude that the decision of the division is supported by substantial evidence and is not based on an error of law. Accordingly, we affirm the judgment of the District Court affirming the division's decision.

*So ordered.*