## MICHAEL W. HERLIHY vs. CIVIL SERVICE COMMISSION & another.[1]

No. 96-P-1975.

Barnstable. January 16, 1998. - May 26, 1998.

Present: GREENBERG, DREBEN, & LENK, JJ.

*Civil Service,* Reinstatement of personnel. *Administrative Law,* Findings, Agency's interpretation of regulation, Regulations, Agency's interpretation of statute, Agency's authority. *Statute,* Construction. *Words,* "Departmental unit." *Regulation.*

The term "departmental unit," appearing in G. L. c. 31, §§ 1 & 39, was not restricted by the provisions of 104 Code Mass. Regs. § 2.10(1) & (2), as promulgated by the Commissioner of Mental Health, so as to deprive employees of the Department of Mental Health of the protections afforded by the civil service law; consequently, a senior employee whose position was lawfully eliminated retained "bumping" rights across all of the department's regions and was not restricted in such privilege to the particular facility or region from which he had been laid off. [838-841]

CIVIL ACTION commenced in the Superior Court Department on November 21, 1995.

The case was heard by *Robert A. Mulligan,* J.

*John F. McCarty* for the plaintiff.

*Mary Murphy-Hensley,* Assistant Attorney General, for the defendants.

GREENBERG, J. This case requires us to construe the Commonwealth's civil service law as it defines "departmental unit" for purposes of replacing less senior employees (a practice commonly known as "bumping") when budgetary constraints so require. During the spring of 1994, the director of the Department of Mental Health's (department) southeastern area decided to eliminate all twelve psychologist II and III positions at the Pocasset Mental Health Center at Bourne (center). As none of

[1]Department of Mental Health.

the persons holding these positions was generating income from third-party payors, a decision was made to eliminate the positions and reallocate those duties to mental health coordinator and social worker slots that were pegged at lower salaries.

On August 5, 1994, the department gave the affected employees notice of the pending layoffs pursuant to G. L. c. 31, § 41. A list of other employees holding similar positions as psychologists in other geographic areas, whose jobs were not involved in the realignment, showed that some of them had less accrued seniority rights than the center employees, but the center psychologists were not allowed to bump them. To this, the plaintiff, Michael Herlihy, the most senior psychologist III working at the center, objected.

Herlihy, a disabled veteran, joined the department in 1977. Disabled veteran's preference provisions contained in G. L. c. 31, § 26, gave him an artificial appointment date of February 7, 1970. After eight years of actual satisfactory service within the department, he was promoted to psychologist III and was assigned to the center. That move occurred in 1985, at a time when his salary and benefits were, in part, determined by a contract negotiated by the Massachusetts Nurses' Association Unit 7, a union that represented the psychologists, nurses, and certain other mental health professionals.[2]

After an unsuccessful attempt on Herlihy's part to block his layoff as a psychologist III at a hearing before the department's local hearing officer in Brockton, the department gave Herlihy a list of bumping options of less senior employees in similar positions whom he could "potentially" displace. There was, in fact, an employee with less seniority in a psychologist III position at the Worcester State Hospital. However, the department's area director determined that this position was outside of Herlihy's "appointing authority," leaving Herlihy with no other viable bumping options.

Herlihy, conformably with G. L. c. 31, § 43, appealed to the State Civil Service Commission (commission). After a hearing on June 13, 1995, an administrative magistrate prepared a

[2]The record contains various references to the collective bargaining agreement; however, relevant portions such as the groups of employees represented by the union and their salary levels have not been provided by the parties. From the affidavit of John P. Sullivan, the department's southeastern area director, we infer that the department's budget for the fiscal year of 1995 contained a shortfall which resulted in the psychologists' job reclassification.

recommended decision in which she concluded that the department's area director had acted properly in functionally eliminating all of the psychologist II and III positions at the center because of bona fide fiscal concerns. Herlihy's senior status made no difference, because he was not bumped by any other employee. The magistrate found that Herlihy's bumping rights were limited to the center, which she concluded fit the definition of a "departmental unit" under G. L. c. 31, § 1. The commission adopted the findings and recommendation of the magistrate. Having decided that Herlihy (and other center employees) had no bumping rights whatsoever outside the center, the commission affirmed the layoffs. Thereupon, Herlihy took the next step of lodging an appeal under G. L. c. 31, § 44, and the State Administrative Procedure Act, G. L. c. 30A, § 14A. A judge of the Superior Court affirmed the decision of the commission. Herlihy appeals from that judgment.

Applicable standards of review for decisions of administrative agencies focus on whether the agency's finding is one of fact or law. Here the question is one of statutory interpretation. In reviewing decisions involving questions of law, appellate courts review the issue de novo. *Raytheon Co.* v. *Director of Div. of Employment Sec.*, 364 Mass. 593, 595 (1974). See *Protective Life Ins. Co.* v. *Sullivan*, 425 Mass. 615, 618 (1997). In the instant case the boundaries of a "departmental unit," established by the language of G. L. c. 31, § 39, upon which permanent employees may exercise their seniority rights is not plain.[3]

---

[3]General Laws c. 31, § 39, as inserted by St. 1978, c. 393, § 11, states in pertinent part: "If permanent employees in positions having the same title in a departmental unit are to be separated from such positions because of lack of work or lack of money or abolition of positions, they shall, except as hereinafter provided, be separated from employment according to their seniority in such unit and shall be reinstated *in the same unit* and in the same positions or positions similar to those formerly held by them according to such seniority, so that employees senior in length of service, computed in accordance with section thirty-three, shall be retained the longest and reinstated first." (Emphasis added.) Section 39 does not explicitly mandate that the appointing authority reinstate senior "employees in the same or similar positions that exist throughout the state." Nor does the definition of "departmental unit" found in § 1 of the statute assist other than to state that such unit comprises "a board, commission, department, or any division, institutional component, or other component of a department established by law, ordinance, or by-law." G. L. c. 31, § 1, as inserted by St. 1978, c. 393, § 11.

The parties are at odds whether the center falls within the definition of a "departmental unit" because it is an administrative component of the department. The department relies on a portion of the definition of "departmental unit" provided in G. L. c. 31, § 1, as inserted by St. 1978, c. 393, § 11, which could encompass the center as an "institutional component, or other component of a department established by law, ordinance, or by-law." Taken out of context, that reading is plausible. When, however, the focus shifts to § 39 of the statute, our analysis prompts us to conclude that the foregoing section does not support such a construction and that Herlihy is not restricted from bumping other junior employees outside of the center.

For its interpretation of G. L. c. 31, § 39, the department relies on 104 Code Mass. Regs. § 2.10(1) & (2) (1993), the text of which is set out in the margin.[4] The regulatory scheme from which this particular provision derives was promulgated pursuant to the authority granted to the department by G. L. c. 19,

---

[4]"*Designation of Departmental Facilities*

"(1) *Authority.* The Commissioner is authorized by M.G.L. c. 19, § 7 to designate in 104 CMR the state facilities under the control of the Department.

"(2) *Departmental Facilities.* In addition to designations that may be made from time to time in other parts of 104 CMR, the following are hereby designated as facilities under the control of the Department:

(a) *State Hospitals*: Danvers State Hospital; Medfield State Hospital; Metropolitan State Hospital; Northampton State Hospital; Taunton State Hospital; Westboro State Hospital; Worcester State Hospital.

(b) *Community Mental Health Centers*: Corrigan Mental Health Center; Erich Lindemann Mental Health Center; Massachusetts Mental Health Center; Pocasset Mental Health Center; Quincy Mental Health Center; Solomon Carter Fuller Mental Health Center; Solomon Mental Health Center; Bay Cove Mental Health Center; and any mental health program for adults that is funded and operated as a separate facility by the Department, directly or by contract, in accordance with 104 CMR.

(c) *Specialized Children's Facilities*: Gaebler Children's Center; and any mental health program for children that is funded and operated as a separate facility by the Department, directly or by contract, in accordance with 104 CMR.

(d) *State Hospital Psychiatric Units*: Hathorne Unit of Tewksbury Hospital."

§ 18.[5] The department argues, therefore, that because these regulations have the force of law, see *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. 762, 768 (1980), it may designate the center as a "departmental unit" for purposes of the civil service law. What the department overlooks is that "[t]o the extent that the regulation seeks to impose restrictions on the clear language of § [39] — which itself neither contains nor permits such restrictions — the regulation is invalid." *Electronics Corp. of America* v. *Commissioner of Rev.*, 402 Mass. 672, 676 (1988). See *Morey* v. *Martha's Vineyard Commn.*, 409 Mass. 813 (1991); *Massachusetts Mun. Wholesale Elec. Co.* v. *Massachusetts Energy Facilities Siting Council*, 411 Mass. 183 (1991).

To be sure, the department has offered strong policy reasons why all bumping rights should be confined to the individual facilities under its regulatory control. The Superior Court judge noted some of these arguments.[6] Nothing in G. L. c. 19 authorizes the department to limit eligible employees from obtaining similar permanent positions within the department's various hospitals and other facilities if they otherwise qualify under G. L. c. 31, § 39. We think, therefore, that the department may not exert its regulatory power under G. L. c. 19 to deprive its employees of the protections afforded by the civil service law. To say that the department has designated the center as an administrative unit does not, therefore, answer the question posed by this appeal. The question is whether G. L. c. 31, § 39, permits permanent employees separated from their civil service positions because of the abolition of those positions to replace less senior employees situated in other mental health facilities throughout the department. We conclude that the answer is yes.

General Laws c. 31, § 39, creates a safety net for civil service employees who are separated from their jobs because of "lack of work or lack of money or abolition of [their] positions."

---

[5]General Laws c. 19 governs the Department of Mental Health. Section 18, as inserted by St. 1986, c. 599, § 8, provides that "[t]he department may . . . adopt such rules and regulations as it deems necessary to carry out the provisions of this chapter."

[6]The Superior Court judge recognized that a broader application of the term "departmental unit" "would frustrate the purposes of the underlying lay-offs creating a domino-style flurry of reassignment and retraining within [the department]. Moreover, although people hired as Psychologist III's are similarly qualified, idiosyncracies of training and operation in each location vary, and broad bumping rights would further render lay-offs impracticable."

G. L. c. 31, § 39. Generally, length of service determines the order of separation. It is true that civil service provisions are not intended to, and do not on their face, preclude abolition of positions, or reorganizations of departments, or the contracting out of work. *Debnam* v. *Belmont*, 388 Mass. 632 (1983). *Gloucester* v. *Civil Serv. Commn.*, 408 Mass. 292 (1990). However, in the instant case, by adopting a restrictive definition of the bumping area, the department contravenes the intent of G. L. c. 31, § 39. The unit contemplated for reinstatement of separated employees must encompass any hospital or facility within all of the department's regions. So long as the employee is governed by the same organizational statute, rules, and regulations, transfer from one geographical area to another should not cause loss of a seniority rating.

From the definition of "departmental unit" contained in G. L. c. 31, § 1, read in context with § 39, for civil service purposes the area which a unit covers must be established "by law, ordinance, or by-law" rather than defined by regulations. For example, when the phrase "departmental unit established by law" was interpreted in context of a fiscal appropriation act, the Attorney General opined that the plain meaning of the statute would be "subverted" if the dozens of units referred to in the capital outlay act were "considered separate 'departments' for the purposes of the civil service law, a result Chapter 652 sought to eliminate." Opinion of the Attorney General, Rep. A.G., Pub. Doc. No. 12, at 80, 81 (1972). Cf. *Newton* v. *Trustees of State Colleges*, 359 Mass. 668 (1971).

Granting a more expansive reading to the term "departmental unit" is consistent with the legislative intent. The civil service system was established to create a pool of non-political appointees to provide continuous administration of governmental services and who are not always compensated at salary levels commensurate with the private sector. Hence, one benefit that flows from the statutory scheme is that employees, like Herlihy, receive the protection of a seniority system with respect to re-employment rights. See *Fall River* v. *Teamsters Union, Local 526*, 27 Mass. App. Ct. 649, 653 (1989). "To achieve th[ese] purpose[s] the Civil Service provisions must be read as a harmonious whole without giving unmerited emphasis to any one section." Opinion of the Attorney General, Rep. A.G., Pub. Doc. No. 12, at 187, 189 (1964). By confining Herlihy's bumping rights to a single administrative entity within the depart-

ment, the department, in effect, affords Herlihy none of the protections earned as a result of his years of service. We do not think that the Legislature had that intent.

The judgment is vacated and the case is remanded to the Superior Court for entry of a judgment restoring Herlihy to his position as a psychologist III.

*So ordered.*