CHARLES E. ANDREWS *vs.* CIVIL SERVICE COMMISSION
& another.[1]

Suffolk. March 9, 2006. - April 28, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Civil Service,* Decision of Civil Service Commission, Termination of employ-
ment, Provisional promotion. *Veteran. Labor,* Public employment. *Public
Employment,* Termination, Transfer.

In a proceeding before a hearing officer of the Civil Service Commission,
there was substantial evidence to support the hearing officer's conclusion
that employees of a State agency in one position had either more complex
duties or a higher degree of responsibility than did employees in the
plaintiff's position, and therefore, the plaintiff, who was a disabled veteran,
was not entitled to a disabled veteran retention preference against
employees in the other position. [616-617]

In an action to review a decision of the Civil Service Commission (commis-
sion) dismissing the plaintiff's challenge of his layoff by a State agency,
there was no merit to the plaintiff's claim that a disabled veteran retention
preference should have been allocated based on the positions in which the
employees were tenured, not those to which they were provisionally
promoted, where even if the plaintiff's argument supported the discharge
of five other employees who eventually were retained, it did not support
retention of the plaintiff because he was not entitled to a promotion to the
position in which the other five were retained; however, because the issue
had been fully briefed and because public policy would benefit, this court
concluded that the commission was correct to consider the provisional
promotions when contemplating layoffs. [617-619]

In an action to review a decision of the Civil Service Commission (commis-
sion) dismissing the plaintiff's challenge of his layoff by a State agency,
the judge and the commission correctly concluded that the department in
which the plaintiff was employed was the relevant departmental unit for
purposes of determining whether the plaintiff had the right to request
demotion in lieu of discharge. [619]

CIVIL ACTION commenced in the Superior Court Department on
June 24, 2004.

The case was heard by *Thomas R. Murtagh,* J., on a motion
for judgment on the pleadings.

[1]Department of Revenue.

The Supreme Judicial Court granted an application for direct appellate review.

*Jonathan M. Feigenbaum* (*Stephanie M. Swinford* with him) for the plaintiff.

*Juliana deHaan Rice*, Assistant Attorney General, for the defendants.

COWIN, J. The plaintiff appeals from a judgment of the Superior Court affirming a decision of the Civil Service Commission (commission), dismissing his challenge of his layoff by a State agency following severe budgetary cuts. The plaintiff is a disabled veteran within the meaning of the civil service statute, G. L. c. 31, §§ 1, 26,[2] and claims that discharge[3] on abolition of his position contravenes the statutory preference accorded disabled veterans. Specifically, he objects to the retention of five employees who were not disabled veterans, and who had been provisionally promoted to positions that he alleges were functionally the same as his own. In the alternative, he argues that the employer improperly denied his right, in lieu of discharge, to transfer to a lower position outside the unit to which he was directly assigned. We allowed the plaintiff's application for direct appellate review and conclude that the relevant positions were not equivalent, the provisional nature of the promotions of the other employees was irrelevant here, and the right to request demotion in lieu of discharge encompassed only lower positions in the plaintiff's departmental unit. Accordingly, we affirm.

*Background.* We recite the relevant facts. The Bureau of

[2]General Laws c. 31, § 1, defines a "disabled veteran" as a veteran within the meaning of G. L. c. 4, § 7, Forty-third (and allowing for a slightly more expansive definition of qualifying service), "who (1) has a continuing service-incurred disability of not less than ten per cent based on wartime service for which he is receiving or [is] entitled to receive compensation from the veterans administration or, provided that such disability is a permanent physical disability, for which he has been retired from any branch of the armed forces and is receiving or is entitled to receive a retirement allowance, or (2) has a continuing service-incurred disability based on wartime service for which he is receiving or is entitled to receive a statutory award from the veterans administration."

[3]"Discharge" is defined in G. L. c. 31, § 1, as "the permanent, involuntary separation of a person from his civil service employment by the appointing authority." For purposes of this opinion, discharge and "separation from employment" are used interchangeably.

Special Investigations (BSI) was formed as a subdivision of the Department of Revenue (department) by St. 1999, c. 127, § 26.[4] The BSI was one of several such subdivisions.[5] See G. L. c. 14, §§ 1, 1A. Its purpose was, among other things, to "initiate investigations and review procedures in order to discover any fraudulent claim or wrongful receipt under any assistance program administered by the department of transitional assistance or . . . the department of social services." St. 1999, c. 27, § 26. To this end, the BSI employed numerous special investigators who were subject to the protection of the civil service statute. See id. See also G. L. c. 31, § 48.

The special investigators occupied three positions: Special Investigator A/B (SI-A/B), Special Investigator C (SI-C), and Special Investigator D (SI-D). The plaintiff, a disabled veteran, was employed and tenured in the SI-A/B position. A tenured employee in the civil service system is one who initially occupied a position by original appointment pursuant to G. L. c. 31, § 6, and has completed the probationary period, or one who has received a "promotional appointment" on a permanent basis as provided in G. L. c. 31, § 8.

In 2002, the BSI faced a serious budgetary shortfall and initiated a reduction of its workforce. The BSI abolished all SI-A/B positions and all but five SI-C positions,[6] and accordingly discharged the incumbents, including the plaintiff. Five employees were retained to staff the SI-C positions, none of whom was a disabled veteran.[7,8] Like the plaintiff, each of these individuals was tenured in the SI-A/B position, but unlike

[4]The BSI previously had been in the Department of Public Safety. See St. 1991, c. 412, § 20 (forming); St. 2004, c. 338, § 7 (dissolving).

[5]The BSI ceased to be a part of the department in 2002. See St. 2002, c. 184, § 24. See also note 8, infra.

[6]SI-D positions were also abolished.

[7]These five employees were initially discharged along with the plaintiff, but were later "recalled" to the open SI-C positions after several employees not discharged opted for voluntary separation from the BSI.

[8]The remaining SI-C positions were eliminated. A unit performing similar functions was simultaneously created in the office of the State Auditor. See St. 2002, c. 184, § 12. It is unclear from the record whether the remaining employees in the SI-C position were reassigned to the unit. Approximately one year after discharge, the plaintiff returned to State service in a different agency at a substantially diminished salary.

the plaintiff, each had also previously served in the SI-C position pursuant to a provisional promotion. A provisional promotion differs from an original appointment or "promotional appointment" (resulting in permanent or tenured status) in that it avoids use of the civil service "eligible list" and ends automatically on "certification . . . of the names of three persons eligible for and willing to accept promotion to [the] position." See G. L. c. 31, § 15. The plaintiff received a hearing after which the department determined that a lack of funding justified discharge.

The plaintiff then appealed to the commission pursuant to G. L. c. 31, §§ 42 and 43. Both parties presented evidence to a hearing officer, see G. L. c. 31, § 2, regarding the nature of the SI-A/B and SI-C positions. The BSI submitted written "class specifications" for the positions that had been promulgated by the human resources division of the Executive Office for Administration and Finance, see G. L. c. 7, § 4A. According to the specifications, the SI-A/B position was "nonsupervisory," while the SI-C position consisted of "first-level supervisors" who "typically supervise" employees in the SI-A/B position, "and/or nonsupervisory employees performing the most complex assignments" who have "exceptional mastery of technical job content beyond the usual competency level." The salary range for the SI-A/B position was $43,274.40 to $58,215.82, while the range for the SI-C position was $47,493.16 to $63,954.80.

The acting director of the BSI testified that employees in the SI-C position performed "more complex" assignments, "and at times [] could supervise over individuals in the 'A/B' status." The more "detailed" or "complex" SI-C assignments, according to the acting director, included "drug diversion type cases or the Department of Medical Assistance type cases where there is a lot of analysis of data, evidence, those type[s] of investigations." In contrast, the plaintiff's duties, which were typical of employees in the SI-A/B position, generally encompassed "look[ing] for people who defaulted on warrants . . . knock[ing] on doors . . . send[ing] [out] letters. . . ." The acting director admitted that the BSI had suffered from a "case backlog" that compelled it to utilize employees in the

SI-C position to perform "A/B" duties, but he maintained that employees in the SI-A/B position never performed "complex" SI-C duties.[9]

The plaintiff testified that he had never been supervised by an employee in the SI-C position and that the only difference between the positions was in the level of compensation. He testified: "I worked with 'A/Bs' and 'Cs.' We did the exact same cases [*sic*]. The cases were assigned randomly. . . . We all did the exact same job." The plaintiff admitted that some employees in the SI-C position were assigned to "special projects" that were somewhat more complex than his normal assignments. He also stated that he had regularly been "partner[ed]" with employees in the SI-C position who were not assigned to special projects.[10]

In findings of fact, the hearing officer cited the written job descriptions and credited the testimony of the acting director of the unit. The hearing officer concluded that the SI-C position generally entailed more complex duties or a higher level of responsibility than the SI-A/B position, and that the plaintiff had no right to be retained in employment in the SI-C position. The hearing officer also decided that the plaintiff had no statutory right to obtain a lower position outside the BSI. The commission adopted the hearing officer's findings of fact and conclusions of law. On appeal pursuant to G. L. c. 31, § 44, a judge in the Superior Court affirmed, concluding that the findings were supported by "substantial evidence," and that there was no other error of law. See G. L. c. 30A, § 14 (7).

*Standard of review.* A party aggrieved by a final decision of the commission may seek judicial review pursuant to G. L. c. 31, § 44. Such review is governed by the provisions of G. L. c. 30A, § 14. Review of conclusions of law is de novo. *Raytheon Co.* v. *Director of the Div. of Employment Sec.*, 364 Mass. 593, 595 (1974). The commission's factual determinations must

---

[9]The acting director nonetheless could not identify specific work performed by particular employees in the SI-C position that was not also performed by employees in the SI-A/B position.

[10]The department conceded in its brief to the commission that the plaintiff "participated in some front end detection cases, but was always paired with Special Investigators (C)."

be supported by substantial evidence, G. L. c. 30A, § 14 (7), meaning "such evidence as a reasonable mind might accept as adequate to support a conclusion," G. L. c. 30A, § 1 (6). See *Trustees of Forbes Library* v. *Labor Relations Comm'n,* 384 Mass. 559, 568 (1981). A reviewing court must consider the entire administrative record and take into account whatever "fairly detracts from its weight." *New Boston Garden Corp.* v. *Assessors of Boston,* 383 Mass. 456, 466 (1981), quoting *Cohen* v. *Board of Registration in Pharmacy,* 350 Mass. 246, 253 (1966). We defer, however, to the credibility determinations made by the hearing officer. See *Guarino* v. *Director of the Div. of Employment Sec.,* 393 Mass. 89, 92 (1984).

*Discussion.* The plaintiff first argues that as a disabled veteran, he should not have been discharged before the five employees who were ultimately retained in the SI-C positions (who were not disabled veterans). General Laws c. 31, § 39, provides that when an appointing authority (e.g., the department) lays off employees, it must do so in order of seniority within the group of "permanent employees in positions having the same title."[11] Section 39 informs application of the disabled veteran retention preference contained in G. L. c. 31, § 26.[12] See *Adoption of Marlene,* 443 Mass. 494, 498 (2005), quoting *Telesetsky* v. *Wight,* 395 Mass. 868, 873 (1985) (statute is read as whole to produce "an internal consistency"). Section 39 makes clear that a retention preference, either by seniority or by status as a disabled veteran, does not operate against employees in higher titles.[13] The preference therefore applied only with

[11]General Laws c. 31, § 39, states in pertinent part: "If permanent employees in positions having the same title in a departmental unit are to be separated from such positions because of lack of work or lack of money or abolition of positions, they shall . . . be separated from employment" in reverse order of seniority.

[12]General Laws c. 31, § 26, states in pertinent part that "[a] disabled veteran shall be retained in employment in preference to all other persons, including veterans."

[13]To read the statute otherwise would transform the preference into a right to be promoted whenever a lower title is eliminated. Such a sweeping result is not supported by the plain language of the statute and would undermine the provisions that provide for placement of qualified employees in each rank of the civil service. See G. L. c. 31, §§ 6B, 7, 8, 9. Such a reading would also be

respect to other BSI employees in the plaintiff's title.[14] The plaintiff does not suggest otherwise. Instead, he argues that the SI-A/B and SI-C positions were in the same title. We disagree.

"Title" is defined by G. L. c. 31, § 1, as "a descriptive name applied to a position or to a group of positions having similar duties and the same general level of responsibility." While §§ 1 and 39 clearly contemplate that different positions (such as SI-A/B and SI-C) may be in the same title, the department introduced substantial evidence, which was credited by the hearing officer, to support that officer's conclusion that employees in the SI-C position had either "more complex" duties or a higher degree of responsibility (i.e., a supervisory role) than did employees in the SI-A/B position.

The plaintiff maintains that the hearing officer's findings were unsupported by substantial evidence because the plaintiff testified that cases were assigned randomly and employees in the SI-C position were not supervisors. However, the hearing officer "was free to believe . . . testimony [of the acting director of the BSI and the written job classification] and to disbelieve [the testimony] of the plaintiff." *Abramowitz* v. *Director of the Div. of Employment Sec.*, 390 Mass. 168, 173 (1983). "If the [hearing officer's] findings are . . . supported [by evidence], it is not open to the [Superior] Court or to this court to substitute other views as to what should be the determination of the facts." *Id.*, quoting *Martin* v. *Director of the Div. of Employment Sec.*, 347 Mass. 264, 268 (1964).

The plaintiff next contends that retention preference should have been allocated based on the positions in which the employees were tenured, not those to which they were provisionally promoted. Rule 15 of the Personnel Administration Rules promulgated by the office of legal counsel of the human resources division, effective May 3, 1999, provides that

inconsistent with our prior decisions holding that the disabled veterans' preference does not apply to promotion. See *MacCarthy* v. *Director of Civil Serv.*, 319 Mass. 124 (1946) (interpreting similar language in predecessor statute). See also *Aquino* v. *Civil Serv. Comm'n*, 34 Mass. App. Ct. 538, 540-541 (1993).

[14]This is consistent with a long-standing opinion of the Attorney General. See Rep. A.G., Pub. Doc. No. 12, at 97-98 (1980), citing Rep. A.G., Pub. Doc. No. 12, at 69-70 (1930).

"[a]ll civil service rights of an employee rest in the position in which he holds tenure." Because, the plaintiff's argument continues, the five employees retained lacked tenure in the SI-C position, these employees should have been considered in the SI-A/B position for purposes of the layoff. Accordingly, § 26 required that the plaintiff be "retained in employment" until all of the five were discharged. We disagree.

The plaintiff's argument fails because all SI-A/B positions were eliminated and the plaintiff's status did not entitle him to promotion to an open SI-C position. See *MacCarthy* v. *Director of Civil Serv.*, 319 Mass. 124 (1946) (no disabled veterans' preference for promotion). Even if the plaintiff were correct and G. L. c. 31 required discharge of all five employees before the plaintiff, their discharge would not have vacated a position that the plaintiff had a right to occupy. In short, while the argument might support discharge of the remaining employees, it does not support retention of the plaintiff. Cf. note 7, *supra*.

Nevertheless, because the issue has been fully briefed and public policy would benefit from the elimination of any uncertainty concerning whether a provisionally promoted employee is "in" a higher title for purposes of § 39, see *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943), we address the issue, which is one of law, *Raytheon Co.* v. *Director of the Div. of Employment Sec.*, *supra* at 595, and conclude that the commission was correct to consider the provisional promotions when contemplating layoffs. Provisional promotion pursuant to G. L. c. 31, § 15, effects a real change from "one title to the next higher title." A provisionally promoted employee ceases to be "in" the original title for purposes of § 39, and does not return to the lower title until the provisional promotion ceases to have effect. General Laws c. 31, § 15, provides only one exception to this rule, relating to calculation of eligibility for a promotional examination. "[T]he fact that the Legislature specified one exception . . . strengthens the inference that no other exception was intended." *Protective Life Ins Co.* v. *Sullivan*, 425 Mass. 615, 620 (1997), quoting *LaBranche* v. *A.J. Lane & Co.*, 404 Mass. 725, 729 (1989). Regardless whether the five employees provisionally promoted to the SI-C position possessed or lacked rights in the SI-C position pursuant to rule 15,

that was the position in which they were employed for purposes of § 39.

Finally, the plaintiff claims that the commission erred in deciding that he could not "bump" to a lower position outside the BSI. An employee may elect to be demoted to a position in a lower title in lieu of discharge, provided that there is a less-senior employee in the lower title for the demoted employee to replace, G. L. c. 31, § 39, a practice known as "bumping." See *Herlihy* v. *Civil Serv. Comm'n,* 44 Mass. App. Ct. 835, 835 (1998). The plaintiff argues that the BSI was not the controlling "departmental unit," but instead was part of the larger departmental unit of the department, and he should therefore have been able to bump to any lower titles within the entire department. See *id.* at 838-840. This is not correct.

A "departmental unit" is defined in G. L. c. 31, § 1, as a "department, or any division, institutional component or other component of a department established by law, ordinance, or by-law." The BSI was created by statute, St. 1999, c. 127, § 26, and therefore qualified under the definition. *Herlihy* v. *Civil Serv. Comm'n, supra,* is not to the contrary. There, the Appeals Court decided only that the applicable unit was not the facility in which the employee worked because the facility had been established by administrative regulations rather than by "law, ordinance, or by-law." See *id.* at 839. Here, the plaintiff has also failed to demonstrate any substantial similarity between his functions in the BSI and those of the larger organization. Thus, we agree with the judge, and the commission, whose interpretation is entitled to substantial deference, *Gateley's Case,* 415 Mass. 397, 399 (1993), that the relevant "departmental unit" is the BSI.

*Judgment affirmed.*