Lauriat, Peter M., J.
Jeff Raymond, Kevin Kacmarczyk, Andrew Soltysik, and Lester Lacki, II (collectively referred to as “the Plaintiffs”) seek judicial review of a decision of the Civil Service Commission (“the Commission”) which upheld the Plaintiffs’ discharge as full-time firefighters employed by the Town of Athol (“the Town”). As justification for the layoffs, the Town Manager cited a lack of funding and a lack of work. The Plaintiffs now argue that these reasons were pretextual, and they seek reinstatement. For the following reasons the Plaintiffs’ Motion for Judgment on the Pleadings is ALLOWED.
BACKGROUND
The Hearing Commissioner found the following facts.
The Plaintiffs were all hired as full-time firefighters between December 1998 and July 1999. From 1990 to 2002, the Town always employed at least nineteen full-time firefighters. Plaintiff Jeff Raymond was elected President of the Permanent Firefighters of Union, Local 1751 (“the Union”) in April 2003. Plaintiff Lester Lacki, II held the position of Secretary of the Union until April 2003. In June; 2002, a full-time firefighter, who is not involved in this action was laid off after the Town experienced a shortfall in revenue.
*323 In December 2002, three full-time firefighters retired and their positions were left open in an effort to reduce the fire department’s budget. In March 2003, the fire department’s deputy chief was laid off. This was a non-union position. At this point, the fire department’s staff consisted of seventeen full-time firefighters and Chief James Wright (“Chief Wright”).
In fiscal year 2003, the Town experienced a budget deficit resulting from several factors, including a decline in “State reimbursements, stagnant real estate tax revenue, and the refusal of the Town taxpayers to approve Proposition 2 1/2 overrides.” Further, Chief Wright projected revenue shortfalls from the fire department’s ambulance service for fiscal years 2003 and 2004. As expected, from 2002 to 2004, the number of ambulance transport calls performed by the fire department dropped precipitously. There were 189 calls in 2002, 110 calls in 2003 and 79 calls in 2004. This reduction in ambulance transport calls resulted in a significant decline in revenue generated by the fire department’s ambulance service. The decline in ambulance transport calls was caused by multiple factors, including an upgrade in ambulance service within the neighboring town of Orange. Also, a private wheelchair service began operating in December of 2002, which further reduced the volume of ambulance transport calls. A decline in reimbursements from insurance companies further contributed to the decline in ambulance revenue. The volume of fire calls, on the other hand, remained consistent during the same period. In 2001 and 2002 there were 57 and 56 calls, respectively, while in 2003 there were 48 calls. In 2004, the number of calls increased to 58.
In November of 2002, Chief Wright knew “that the Town’s savings would have to be used to cover the projected ambulance revenue shortfalls. Despite this knowledge, Chief Wright never informed the Town’s Finance Committee or its Board of Selectmen of the Department’s impending deficit prior to the May 5 Town Meeting.”
Toward the end of 2002, Chief Wright formulated several cost-saving measures that included significant changes to the Union’s collective bargaining agreement. These changes consisted of, inter alia, limiting personal days off, implementing an on-call policy, and adding a residency requirement for firefighters. These proposals were rejected by the Union because they refused to engage in any mid-term contract negotiations. Plaintiff Raymond sought to have the entire contract opened for further negotiations, rather than limiting the negotiations to provisions that would favor the Town. The collective bargaining agreement was set to expire on June 30, 2003.
Early 2003 marked a deterioration in relations between Chief Wright and the Union. On April 17, 2003, the Union offered to begin successor contract negotiations. In response to this offer, Chief Wright wrote a letter to Plaintiff Raymond on April 28, 2003, advising him “that we anticipate having to lay off personnel within the next month or so.” The Union perceived this letter as an “idle threat that would only come to fruition if the Town Meeting cut the Fire Department’s proposed budget.”
Chief Wright was responsible for submitting the fire department’s proposed budget to the Town Manager, Peter Janikowski (“Town Manager Janikowski”). Town Manager Janikowski would then submit the proposal, along with other department budgets, to Finance Committee of the Board of Selectmen. If approved by the Board of Selectmen, the Town’s voters would vote on the Town’s budget at the Town Meeting.
On February 19, 2003, Town Manager Janikowski accepted Chief Wright’s third proposal for the fire department’s budget. This proposal was limited to keeping the fire department at its current level of seventeen firefighters, its lowest level in years. Significantly, this third proposed budget would only maintain seventeen full-time firefighters if the Union had conceded to the proposed concessions that had already been rejected outright by the Union. Without these concessions, more firefighters would have to be laid off. Chief Wright failed to disclose this fact to Town Manager Janikowski, the Finance Committee of the Board of Selectmen, or the voters during the Town Meeting.
The Town Finance Committee met eight to ten times during the winter of 2003-2004 to evaluate the proposed 2004 budget. Chief Wright attended all of these meetings but never disclosed to the Finance Committee that his proposed budget was based on Union concessions that were not likely to materialize. The Finance Committee approved the fire department’s budget for fiscal year 2004 with slight cuts. The Finance Committee was under the impression that, even with the minor cuts, the fire department could maintain its staff of seventeen full-time firefighters.
The Board of Selectmen approved the 2004 fiscal year budget, also believing that the fire department budget was sufficient to employ seventeen firefighters. Chief Wright never disclosed to the Board of Selectmen that the budget would allow for seventeen firefighters only if the Union accepted his proposed concessions.
The Town residents who were registered to vote were sent a fiscal year 2004 proposed budget on April 8, 2003. The town residents have the authority to approve or reject the municipal budget at the Town Meeting. At the Town Meeting held on May 5, 2003, “Athol residents approved $1,368,698 for the 2004 fiscal year Fire Department budget, as proposed in the Athol Municipal Budget.’ ” Again, this budget was approved on the assumption that the budget was sufficient to pay salaries and benefits to Chief Wright and seventeen full-time firefighters.
During the May 5th Town Meeting, Selectman Maga proposed increases in the fire department’s budget for *324 the 2004 fiscal year. After a lengthy debate, these proposals were rejected. It is noteworthy that Selectmen Maga and the Union lobbied for these increases based on the belief that these increases would provide funding for the hiring of additional firefighters. Chief Wright remained silent during this debate.
Chief Wright also never provided the Town’s residents any information that would suggest that additional layoffs would be necessary if his proposed budget was approved without the additional Union concessions. He testified that he did not do this because the Union was in the “best position” to persuade the residents and the town officials to increase the fire department’s budget. This proved to be significant as evidenced by the following conclusions of the Commission: “Selectmen Maga and Foristall and Finance Committee member Willie testified that they would have vigorously opposed the recommended fiscal year 2004 Fire Department budget had they known that layoffs could result from it.” Had the town leaders been aware that the proposed fire department budget was unreasonably based on unrealized concessions for the Union, they “would have acted to avoid the layoffs.”
On May 19, 2003, Town Manager Janikowski notified the Plaintiffs that the Town intended to discharge them, citing a lack of funds and a lack of work.[1] The “lack of funds” justification
was partly a result of the precipitous decline in ambulance calls and, more significantly, from two incorrect assumptions regarding the Town’s budget. The first incorrect assumption was that ambulance revenues for the first five months of2003 were estimated to be $165,000 less than originally projected. The second incorrect assumption was that Chief Wright calculated the Department’s budget according to an agreement with the Union that was never realized.
It is noteworthy, however, that ambulance revenue is deposited into a general fund and is therefore not directly linked to the fire department budget. Also, all parties agree that the purpose of the ambulance service is one of safety, rather than a source of income for the Town.
The Commission noted that, prior to the Plaintiffs’ discharge,
Chief Wright violated the collective bargaining agreement (hereinafter, “the C.A.”) drug testing procedure by randomly subjecting four firefighters to a urine test at a location not in accord with the C.A. Chief Wright also implemented a light duly policy, forcing a firefighter who had been injured on duty to return to work prematurely. There is no light duty clause in the parties’ C.A. and the Union was never given the opportunity to bargain for it.
Significant tensions between Chief Wright and the Union continued to exist after the Plaintiffs were laid off. For example in February 2004 Chief Wright made several proposals that were considered unfavorable to the Union. Later, in the spring of 2004, he threatened to lay off the remaining the full-time firefighters in a meeting with his staff. He was openly hostile to Union leadership during this meeting.
On August 18, 2003, a special election was held where Athol voters rejected a ballot question that would have authorized an additional $156,937 in taxes to fund the fire department and ambulance services. Further cuts to the fire department budgets were approved in the Fall Town Meeting on October 20, 2003.
The Plaintiffs timely appealed their layoffs to the Commission. By a 3-2 vote, the Commission rejected the Plaintiffs’ appeal. The Minority of the Commission, which included the presiding Hearing Commissioner, had concluded that the Plaintiffs’ discharge was a product of anti-Union animus exhibited by Chief Wright. They further concluded that there was no “just cause” for the Plaintiffs’ discharge because: (1) there was no “lack of work” as evidenced by the steady number of fire calls; and (2) the “lack of money” justification was pretextual because Chief Wright purposely misled the town officials and voters regarding the proposed 2004 budget.
The Majority, accepting the findings of fact of the Minority, concluded that there was “just cause” primarily because there was indeed a fiscal crisis in the Town leading up to, and at the time of, the Plaintiffs’ discharge. It reasoned that, in light of the budget constraints affecting the Town, it would be improper for the Commission to substitute its judgment for that of the appointing authority. Further, the majority concluded that there was no evidence that the Board of Selectmen acted with any malice. The majority also pointed out that Athol voters rejected additional funding in voting against a Proposition 2 1/2 override with the knowledge that such a rejection would reduce the number of firefighters.
DISCUSSION
“A party aggrieved by a final decision of the commission may seek judicial review pursuant to G.L.c. 31, §44.” Andrews v. Civil Serv. Commission, 446 Mass. 611, 615 (2006). The Court’s review is governed by the provisions of G.L.c. 30A, §14. Id. Pursuant to G.L.c. 30A, §14(7), this Court may reverse, remand, or modify an agency decision if that decision is based on an error of law or on unlawful procedure, is arbitrary and capricious, or if there is a lack of substantial evidence to support the decision. “A reviewing court must consider the entire administrative record and take into whatever fairly detracts from its weight.” Andrews, 446 Mass. at 616 (internal quotations omitted).
The Commission’s authority to review the discharge of a civil service employee is dictated by G.L.c. 31, §§41-43. A tenured civil service employee may only be discharged for “just cause.” G.L.c. 31, §§41. “Just *325 cause” has been defined as “substantial misconduct which adversely affects the public interest by impairing the efficiency of the public service.” Boston Police Dep’t v. Collins, 48 Mass.App.Ct. 408, 411 (1986) (internal quotations omitted). In the absence of pretext or bad faith, lack of funds and lack of work are both considered “just cause” under G.L.c. 31, §§41. Gloucester v. Civil Service Commission, 408 Mass. 292, 297 (1990); Debnam v. Belmont, 388 Mass. 632, 634 (1983).
The Commission’s role is limited to determining whether the employee’s discharge was, by a preponderance of the evidence, supported by “just cause.” Gloucester, 408 Mass. at 297. The Commission may not substitute its judgment for that of the appointing authority. See, e.g., Gloucester, 408 Mass. at 297; Falmouth v. Civil Service Common, 61 Mass.App.Ct. 796, 803 (2004); Collins, 48 Mass.App.Ct. at 412. The Commission’s conclusions must be supported by substantial evidence. Andrews, 446 Mass. at 615-16. Thus, the Commission’s decision to uphold the layoffs cannot be based on an error of law and must be supported by “such evidence as a reasonable mind might accept as adequate to support a conclusion.” Id.
In releasing the Plaintiffs from their positions, the Town cited a lack of work and a lack of funds as justifications. In rejecting the Plaintiffs’ appeal, the Majority of the Commission did not address the “lack of work” justification. Instead, the Majority based its decision solely on the Town’s “lack of funds” justification.[2] Thus, the Court will focus its analysis on the Town’s “lack of funds” justification for the Plaintiffs’ dismissal.
The Supreme Judicial Court has recognized that “lack of money” may be a sufficient justification even when a municipal department’s budget has not declined. See Gloucester, 408 Mass. at 299 (“(O)bviously, if the city had ignored competing demands for its funds, it would have had enough money to pay [the plaintiffs salary]”).
[I]n the absence of pretext or device designed to defeat the civil service law’s objective of protecting efficient public employees from partisan political control or to accomplish a similar unlawful purpose, the judgment of municipal officials in setting the municipality’s priorities and identifying the goods and services that are affordable and those that are not cannot be subject to the commissioner’s veto.
Gloucester, 408 Mass, at 299-300.
It is also clear, however, that a layoff will not be justified if the stated reason of dismissal is pretextual and the discharge was the product of improper motivations. Cambridge Hous. Auth. v. Civil Serv. Common, 7 Mass.App.Ct. 586, 589 (1979). Layoffs based on anti-union hostility are not based on “just cause.” Id. If an appointing authority has made a prima facie showing that it had just cause for a layoff, the discharged employee has the burden of establishing that the layoff was executed in bad faith. See Comm'r of Health and Hospitals of Boston v. Civil Serv. Common, 23 Mass.App.Ct. 410, 414 (1987). Accordingly, it is the Plaintiffs’ burden in this case to establish that their discharge was tainted by bad faith.
The Majority of the Commission concluded that “[t]he findings of fact make it painfully clear that the Town of Athol, like many other cities and towns at the time, was facing a budget crunch, which began in Fiscal Year 2003.” It reasoned that, it would be improper to substitute the Town’s judgment with its own by requiring the Town to “share the pain” evenly across all municipal departments.
However, the Majority failed to address the Plaintiffs’ principal argument that the budget process was tainted by Chief Wright’s anti-Union animus as evidenced by: (1) Chief Wright’s budget, which factored in Union concessions that were never agreed upon; (2) Chief Wright’s persistent failure to alert the Finance Committee, Board of Selectmen, or Athol voters about the potential for impending layoffs; and (3) the threats of layoffs made to the firefighters before and after the Plaintiffs’ were discharged; (4) ChiefWright’s breaches of the collective bargaining agreement on multiple occasions; and (5) Chief Wright’s “open hostility” toward the Union’s leadership.
The Majority acknowledged that the Board of Selectmen, Finance Committee, and the Athol voters all believed that the budget they were passing would not require any layoffs in the fire department. It then noted, however, that “(w]hile the Selectmen and Finance Committee were in the dark regarding these budgetary assumptions, the Fire Chief, the Union President and the then-Town Manager were not.” This blanket statement is not, in its entirety, supported by the record.
The Majority points to Chief Wright’s threatening letter to the Union as evidence that Union leadership were aware of the budget shortfalls and the potential for future layoffs. This letter was sent one week before the May 5th Town Hall Meeting, and the Hearing Commissioner, based on oral testimony, concluded that this letter was dismissed by the Union as “an idle threat” because they believed that the Town would pass the submitted budget which provided for sufficient funds for all the salaries of the firefighters. See Cambridge Hous. Auth., 7 Mass.App.Ct. at 588 (“Findings based on oral testimony will not be reversed unless plainly wrong”) (internal quotations omitted). The Hearing Commissioner never concluded that the Union was aware of the budget shortfalls, and the evidence suggests that they were never aware of the lack of funds in the proposed budget. This is supported by Plaintiff Raymond’s testimony, where he noted that his advocacy for more funds during the Town Meeting was designed to hire additional firefighters, rather than maintain the status quo.
Further, the fact that Chief Wright knew about the budget shortfalls does not support the Majority’s conclusion that the layoffs were made in good faith. On this point, the Plaintiffs maintain that the process was *326 tainted because Chief Wright knew of the budget shortfalls and failed to notify the Board of Selectmen or Finance Committee.
In Cambridge Housing Authority, the Commission reinstated a discharged employee after concluding that the employee was discharged based on improper motives. 7 Mass.App.Ct. at 588-89. In affirming the Commission’s decision, the Appeals Court reasoned that there was ample evidence to support the Commission’s conclusion because: (1) there was testimony that the employee’s position was eliminated based on his role as a local union leader; and (2) the employee’s eliminated position was replaced by a new position with nearly identical responsibilities. Id. at 590.
Here, it is clear, as the Majority emphasizes, that the Town was suffering a budget crunch. Also, unlike in Cambridge Housing Authority, the Plaintiffs’ positions were not immediately filled by new employees. On the other hand, there is ample evidence in the record to suggest that the layoffs were facilitated by Chief Wright and were improperly motivated by his anti-Union animus. This evidence distinguishes these circumstances from cases where there was a complete absence of evidence of bad faith. See Gloucester, 408 Mass. at 298 (administrative magistrate explicitly concluded that the City did not act in bad faith); Debnam v. Belmont, 388 Mass. 632, 635 (1983) (laid off firefighters stipulated that the layoffs were made in good faith); Shaw v. Bd. of Selectmen of Marshfield, 36 Mass.App.Ct. 924, 925 n.3 (1994) (rescript) (noting that “(g]ood faith is not doubted in this case”). Further, the Hearing Commissioner — who actually heard live testimony and was able to evaluate the witnesses’ credibility — concluded that the process was tainted by Chief Wright’s improper motives. See Vinal v. Contributory Retirement App. Bd., 13 Mass.App.Ct. 85, 100 (1979) (noting that “When the determination of motive or purpose hinges entirety upon the degree of credibility to be afforded the testimony of interested witnesses, the credibility findings of the Trial Examiner are . . . not to be easily ignored”) (internal quotations omitted).
The Majority of the Commission also emphasized the fact that there was a lack of evidence indicating bad faith on the parts of the Town Manager, Board of Selectmen, or the residents voting in the Town Hall meeting. Thus, they contend that the decision to lay off the Plaintiffs was not pretextual or made in bad faith. The problem with this analysis is that it supposes an artificial barrier between Chief Wright and all the other Town Officials. This is an unreasonable approach because the entire town based its decision on Chief Wright’s proposal of the budget. Thus, if Chief Wright’s proposal was made in bad faith, the entire process was tainted by Chief Wright’s improper motives. This is particularly true in light of the fact that there is no evidence in the record to indicate that the Town Officials or residents were on notice that the budget they would be voting on would result in the layoffs. Accordingly, the budget approval process after Chief Wright’s proposal was not insulated from Chief Wright’s personal bias.
The case law is clear that a lack of funds is not considered “just cause” under G.L.c. 31, §43 if that justification is a pretext for underlying improper motivations. See, e.g., Gloucester, 408 Mass. at 299-300 (judgment of City officials will not be subject to review “in the absence of pretext or device designed to defeat the civil service law’s objective of protecting efficient public employees from partisan political control or to accomplish a similar unlawful purpose”) (internal quotations omitted). The Court concludes that the Commission committed an error of law in failing to consider the effect of Chief Wright’s improper motivations on the budget approval process. Accordingly, the Court agrees with the conclusion of the Minority that “Chief Wright deprived the Athol finance Committee, Board of Selectmen, and Town Meeting of the ability to make a good faith, non-arbitraiy determination that its revenues would be insufficient to pay the employees’ salaries.”
ORDER
For the foregoing reasons, the Plaintiffs’ Motion for Judgment on the Pleadings is ALLOWED.

The Plaintiffs were laid off according to their seniority.

The Court concludes that the administrative record lacks substantial evidence in support of the “lack of work” rationale for dismissing the Plaintiffs. Therefore, this reason did not constitute “just cause” under G.L.c. 31, §41. This conclusion is based on the fact that there was no significant decline in fire calls during the years leading up to the Plaintiffs dismissal. Further, as noted above, the Athol fire department had already employed its lowest number of firefighters in a decade when the Plaintiffs were laid off.